**People of the State of Illinois ex rel. Philip Michajlow-ski, Appellant, v. Kirik Tanaschuk, Appellee.**

**Gen. No. 42,467.**

Opin-ion filed December 31, 1942.

BERNARD W. VINISSKY, of Chicago, for appellant.

OPLATKA, PAVEK & OPLATKA, of Berwyn, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is a *quo warranto* action filed by the People of the State of Illinois on the relation of Philip Michajlowski against the defendant Tanaschuk to determine the defendant's right to exercise the office of elder in the Holy Trinity's Russian Orthodox Greek Catholic Church of Chicago. This cause was heard before the court, who, after hearing the evidence offered by the plaintiff and by the defendant, entered an order dismissing the complaint, and judgment was entered thereon.

The plaintiff's theory is that the defendant is wrongfully assuming the right to act as elder of the church congregation which is a corporation organized under the laws of the State of Illinois, and plaintiff contends that he is the properly and duly elected elder of such church congregation.

The defendant, however, presents his theory in this case and contends that the plaintiff, while being elected to the office of elder by a majority of votes of the congregation, was not confirmed in his office as required by the canon laws, also known as Normal Statutes, of the church and that at a subsequent election the defendant was duly elected and qualified as such elder.

The statement of facts as they appear in the record indicates that Philip Michajlowski is a resident of Chicago and a member of the Holy Trinity's Russian Orthodox Greek Catholic Cathedral; that the Cathedral is a religious corporation organized under the laws of Illinois and having its principal place of worship and appurtenant place of business in Chicago, Cook county, Illinois, and that the Normal Statutes

provide for the election annually of one elder, to be elected from and by the parishioners in good standing by ballot at their annual meeting, for a term of one year. At the annual meeting of the parish held on January 4, 1942, the plaintiff received 47 votes. The defendant, Kirik Tanaschuk received 40 votes and J. Tonoff received 3 votes. After the balloting had been completed, the chairman of the meeting, Bishop Leonty, announced that the plaintiff had been elected by a majority of the votes. The Bishop congratulated the plaintiff on his election; also the Bishop called in all the members of the previous committee and told them to be at the church on the next Sunday for the transmission of duties to the new committee and told the newly elected members of the church committee, including the plaintiff, to come next Sunday to be sworn in. When the plaintiff appeared on the following Sunday, he was told that he would not be sworn in, as the Metropolitan (the ruling Archbishop of the church in America) had refused to confirm the election. A meeting of the church was held on February 1, 1942, at which Bishop Leonty presided as chairman and Vladimir Greevsky acted as secretary. It is contended by the defendant that he was elected by acclamation at this meeting.

The trial court delivered an opinion in deciding this action, and from the opinion it would seem that the trial judge was moved in making his decision by the fact that he did not consider that he had any authority to act. He said:

"I think that in this election of January 4th, if the person whose authority it was to approve those that were elected did not approve it, that is a matter for the church group, and a court, a civil court cannot interfere in their religious matters. As to the holding of the second meeting, I think the same thing applies. Their rules will govern, and whether their rules have

been complied with is a matter for them to determine."

The plaintiff submits that the trial court was in error in reaching this conclusion; that the religious corporation over which the defendant is assuming to act as elder is incorporated under the laws of the State of Illinois relating to the incorporation of religious corporations; that its charter was recorded in the office of the recorder of deeds of Cook county on December 24, 1924. Plaintiff then calls to our attention paragraph 9 of the *Quo Warranto* Act (ch. 112, Smith-Hurd's Ann. Stats. [Jones Ill. Stats. Ann. 109.498 (1)]) adopted in 1937, which provides as follows:

"A proceeding in *quo warranto* may be brought in case: (a) Any person shall usurp, intrude into, or unlawfully hold or execute any office, or franchise, or any office in any corporation created by authority of this State."

The plaintiff contends, without the citation of authority, that this proceeding comes within the provision of the statute just cited.

It is also contended that the church corporation has been organized and exists only by virtue of the laws of the State of Illinois and that the office of elder is an office in that corporation. This provision of the statute just quoted does not, in regard to the question in this case, substantially depart from the language of the statute of 1874 and amendments thereto and which were repealed by the act of 1937. (Pars. 1–8, ch. 112, Smith-Hurd's Ann. Stats.) Plaintiff avers that in earlier cases it was held that *quo warranto* was the only remedy to try title to church offices, and in support of plaintiff's position cites the later case of *Shavers v. Thomas*, 339 Ill. 622, in which a bill in chancery was filed by the plaintiffs who claimed to be

the sole surviving trustees of the First Colored Baptist Church of Clinton. The bill alleged that the defendants assumed to hold the office of trustees of said church and prayed for an injunction restraining them from performing certain acts. The court said:

"It is contended by appellants that they were the sole trustees and that the appellee trustees were usurpers. The bill was drawn upon the theory that appellants, as trustees, were vested with the legal control and management of the church property instead of the appellee trustees, and it sought to restrain appellees from pretending that they were trustees of the church. The title to the office of trustee is here only collaterally involved. The appellee trustees had been *de facto* elected to a corporate office, had accepted the same, entered upon the performance of their duties and were in the possession of the property. An information in the nature of *quo warranto* will lie against one who intrudes himself into the office of trustee of a church corporation, and his title to the office cannot be decided in a collateral suit but can only be decided in a direct proceeding."

To the same effect is *Lawson v. Kolbenson,* 61 Ill. 405, cited by the plaintiff, where the court said:

"It is the settled law of this country that an information in the nature of *quo warranto* will lie against one who intrudes himself into the office of trustee of a church corporation. Ang. & Ames on Corp. 9th ed. 751.

"The defendants had been *de facto* elected to a corporate office, had accepted and acted in the same. In such case, the validity of their election could only be tried by a proceeding on information in the nature of *quo warranto.* Nor can the title to an office, in such case, be decided in a collateral suit; it must be by a direct proceeding."

And it is suggested that while the authorities just cited specifically refer to the office of trustee they are

applicable to the case at bar. Whether the other elders were considered church trustees or not is beside the point. The statute does not so limit the authority of the court. The rule is applicable to any officer of a church corporation. The plaintiff further suggests that the trial judge placed great stress on the case of *Chase v. Cheney*, 58 Ill. 509. In that case the question involved was whether or not the rector of the church was conducting himself in accordance with the tenets of the faith, and we will discuss the theory of that case later on. Plaintiff goes on to suggest that in the case at bar the questions involved are whether the defendant is entitled to exercise the office of elder or whether the plaintiff is entitled to exercise such office to which he contends he was elected in accordance with the canon laws governing the religious corporation in question. Paragraph 15 of the canon law sets forth the jurisdiction of the local parochial council, and provides that such local council shall manage parochial affairs subject to the authorities of the diocese. Paragraph 16 provides that the parochial council shall consist of (a) members of the clergy, (b) the church elder, (c) and the other representatives of the parish including the treasurer, secretary, and curators (not exceeding twelve) to be elected by the parish meeting for one year. This paragraph of the canon laws, it is contended, clearly makes a distinction between the clerical and lay members of the council. Plaintiff's discussion that is before us further goes on to quote paragraph 18 of the canon laws, in which the duties of the parish council are set forth, and states that these duties principally concern themselves with the collection and disbursement of the funds needed for the operation of the parish institutions including cemetery, schools and other institutions for instructions or charity, and that this paragraph specifically provides for recourse to the "law courts" in the following language; that the parochial council is entrusted with, among other things:

". . . intercession before civil institutions, hospitals, prisons, law courts, factories and schools for the need of the parish . . . ."

It is further stated that paragraph 30 of the canon laws provides as follows:

"If a parish meeting is called to consider questions which, according to the laws of the State, demand compliance with some preliminary formalities, the latter must be fulfilled with thorough exactitude. . . ."

And it is suggested that the Holy Trinity's Russian Greek Orthodox Catholic Cathedral of Chicago was organized under the laws of the State of Illinois, and is subject to all the laws governing religious corporations, and that whether or not this religious corporation has complied with the law is a matter to be determined in the courts of this State. The Supreme Court has definitely laid down this rule in *Shavers v. Thomas,* 339 Ill. 622, which has been cited by the plaintiff.

The defendant suggests that the trial court properly determined that if the official of the church whose authority it was to approve or disapprove the election of January 4, 1942, acted in accordance with the Normal Laws, rules and regulations of the church, a civil court should not interfere or sit as a court of appeal to revise the judgment of the ecclesiastical tribunal. It does not appear from the pleadings that the relator alleged or charged that the Archbishop, Metropolitan Theophilus, is not the ruling head of the church in America. Nowhere is it alleged or charged that the matter was not brought before the Metropolitan Theophilus in the usual and regular manner of reporting elections for his approval or disapproval. The only allegation in the reply of the plaintiff is that the plaintiff was confirmed in his election as elder by Bishop Leonty, and that the action of the Archbishop as set forth in paragraph 8 (d) of the answer was not

authorized or effective under the Articles of Association or the Normal Statutes. Defendant suggests that it became necessary for the trial court to determine, first, did the Archbishop have authority to act under the Normal Statutes, and, second, what was his decision? The Articles of Association provide that the Holy Trinity Cathedral of Chicago is organized and formed to worship Almighty God according to the Canon Laws of the Eastern Orthodox and Apostolic Church . . . and according to the "Normal Laws," rules, requirements and regulations for the parishes of the North American Orthodox Diocese of said church in America in the matters of rites and personal or social status of its clergy and parishioners. The Normal Laws are also referred to in paragraph 3 of the Articles of Association, and in paragraphs 4 and 14.

Paragraph 16 of the Normal Laws, as it is cited, provides that the members elected to the parochial council are to be confirmed by the Archbishop or Bishop of the Diocese, and if not confirmed, new candidates must be elected. The Normal Laws, rules and regulations of the church provide for just such a situation as arose in the case at bar.

It is suggested that a civil court will not substitute civil laws for the ecclesiastical laws in matters affecting the government, organization and discipline of a church, and the case is cited of *Chase v. Cheney,* 58 Ill. 509, in which the court in its opinion said:

"We have no right, and, therefore, will not exercise the power, to dictate ecclesiastical law. We do not aspire to become de facto heads of the church, and, by construction or otherwise, abrogate its laws and canons. We shall not inquire whether the alleged omission is any offense. This is a question of ecclesiastical cognizance. This is no forum for such adjudication. The church should guard its own fold; enact and construe its own laws; enforce its own discipline; and thus

will be maintained the boundary between the temporal and spiritual power.''

It is further said by the court:

''Our constitution provides, that 'the free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed.' . . . Religious worship consists in the performance of all the external acts, and the observance of all ordinances and ceremonies, which are engaged in with the sole and avowed object of honoring God. The constitution intended to guarantee, from all interference by the State, not only each man's religious faith, but his membership in the church, and the rites and discipline which might be adopted. . . . Freedom of religious profession and worship can not be maintained, if the civil courts trench upon the domain of the church, construe its canons and rules, dictate its discipline, and regulate its trials.''

The defendant further calls our attention to the fact that it is argued by the plaintiff that his right to hold the office of elder in the Holy Trinity Cathedral of Chicago is a civil right, and therefore his civil rights are involved, which the circuit court should protect, and says that the same argument was made in the case of *Chase v. Cheney*, 58 Ill. 509, that it was there claimed for Rev. Mr. Cheney that his civil rights were involved in the controversy; that the office of clergyman is one of public concern; that he has a vested right in it; that the right to preach is, in itself, property; that attached to the office in question are salary and emoluments; that there is a value in the right to pursue any lawful avocation. Defendant quotes the language of the Supreme Court in disposing of the argument, as follows:

''We have no doubt either of the absolute right of every citizen, under our constitution, to teach and preach the gospel, to whomsoever will listen. But in

an organized church, with written or printed rules, and established doctrines and mode of worship, the right is qualified. The continuance, power and emoluments of the position, depend upon the will of the church. The right is contingent and restricted, and, as a thing of value, is very much lessened. The sentence of the church judicatory, in a proper case, deprives of the position, and salary and emoluments are gone.

". . . Shall we maintain the boundary between Church and State, and let each revolve in its respective sphere, the one undisturbed by the other? All history warns, not to rouse the passion or wake up the fanaticism, which may grapple with the State, in a deathly struggle for supremacy."

A further case that is cited by the defendant is *Fussell v. Hail*, 233 Ill. 73, wherein a bill was filed for a decree declaring that the general assembly of the Cumberland Presbyterian Church has no power, under the constitution of the church, to unite with the Presbyterian Church in the United States of America, or to carry over any of the property belonging to or held in trust for it. A demurrer was sustained and the bill dismissed for want of equity. In affirming the decree it was said:

"The civil courts deal only with civil or property rights. They have no jurisdiction of religious ecclesiastical controversies."

After quoting from our constitution on the subject of religious freedom, it was said:

"Such freedom of religious profession and worship cannot be maintained if the civil courts may interfere in matters of church organization, creed and discipline, construe the constitution, canons or rules of the church and regulate and revise its trials and the proceedings of its governing bodies."

Several authorities are cited in support of this doctrine, including the case of *Chase v. Cheney*, 58 Ill. 509, the court, in the *Fussell* case, saying further:

"The civil courts afford no remedy for any abuse of ecclesiastical authority which does not violate a civil or property right. Church tribunals ought to perform their functions honestly, impartially and justly, with due regard to their constitutional powers, sound morals and the rights of all who are interested; but if tyranny, force, fraud, oppression or corruption prevail, no civil remedy exists for such abuse except where it trenches upon some property or civil right. The ordinary courts have no cognizance of the rules of a religious organization or other voluntary association, and cannot consider whether they have been rightly or wrongly applied."

Defendant points to the rule which was adopted by our Supreme Court that, in cases involving property or civil rights, where those rights depend upon the constitution, canons, rules and regulations of the church organization, and such constitution, canons, rules and regulations have been interpreted by a judgment of the ecclesiastical tribunal provided therein, the civil courts will adopt and follow the judgment of such ecclesiastical court or tribunal in the determination of the property or civil rights involved in the controversy, and points to the case of *First Presbyterian Church of Lincoln v. First Cumberland Presbyterian Church of Lincoln*, 245 Ill. 74, upon this question. It appears from the opinion in that case that a bill was filed to restrain defendants from maintaining and prosecuting a certain ejectment suit against complainants for the possession of church property. The court there said that the question which presented itself at the threshold of that case was, had the court below jurisdiction of the cause made by the bill and, if so, how far can it go, in the exercise of its jurisdiction as a court of chancery, in determining the case upon its merits as an original proposition? After discussing authorities, the court said:

"While it must be admitted that an ecclesiastical court cannot adjudicate upon and determine a civil or property right (*Fussell v. Hail, supra*), we think the great weight of authority in this country is to the effect that the civil courts, in adjudicating upon civil and property rights in those classes of church contentions to which this case belongs, are bound by the adjudications of the ecclesiastical court to which of the contending factions in the church is the true representative of the church and which faction is outside of and beyond the pale of the church, and that the civil courts will decree the title of church property to belong to the faction in the church which the ecclesiastical courts have held to be the true representative of the church."

It is further suggested that the court in the *Presbyterian Church* case opinion discussed *Schweiker v. Husser*, 146 Ill. 399, and quoted favorably from the opinion as follows:

"In determining this question recourse must be had to the constitution and laws of the denomination, and especially to the decisions on that subject of the supreme judicial, legislative and administrative authority of the denomination, the general conference. If such decisions can be found, unless they are clearly and manifestly repugnant to the established laws of the denomination, they are binding and conclusive upon the civil courts, and must be followed in the determination of such property rights as those courts may be called upon to adjudicate."

The court also quotes with approval the case of *Lamb v. Cain*, 129 Ind. 486. Further in its opinion the court said:

"We have endeavored to give this case the consideration which the interests of the parties and the importance of the questions involved demand, and have reached the conclusion that the question whether the reunion between the Cumberland church and the Pres-

byterian church was a valid reunion was a question for the general assemblies of the two churches to decide, sitting as the highest ecclesiastical judicatories of those churches, and that the general assembly of the Cumberland church, having held the reunion valid and binding upon the Cumberland church, its judgment is binding upon this court, and that this court must follow the determination of that ecclesiastical court in the determination of the property rights here involved.''

The defendant calls our attention to the fact that the plaintiff contends that the church corporation has been organized and exists only by virtue of the laws of the State of Illinois, and that the office of elder is an office in said corporation, but that this is a misapprehension; that the right to organize churches and church associations is guaranteed by Article II of the Constitution, Section 1 of the Bill of Rights; and that the statute on ecclesiastical corporations merely permits religious associations to incorporate, so that an association as a legal entity may hold property in its own name, and sue and be sued in its own name, and not be required to hold property or to sue and be sued through trustees; and contends that the government of the church is not regulated by statute, but by the canon laws of the church.

Defendant sets forth that the organization of the Russian Orthodox Greek Catholic Church is an hierarchy with Patriarch Tikhon of Moscow, Russia, as the supreme head, the Metropolitan Theophilus as the Archbishop, and the Right Reverend Leonty as the Bishop of Chicago. The clergy staff of the Holy Trinity Cathedral consists of the Bishop of Chicago, two priests, one deacon and two readers. Due to the fact that there is only one priest in the Cathedral now, the Bishop acts as first priest. The parish priest is the chairman of the parochial council. It is the contention of the defendant that when Leonty presided over the parish meeting on January 4, 1942, he presided, not as Bishop, but as first priest of the parish.

As stated by defendant, paragraph 16 of the Normal Laws provides that if any candidate elected at the parish meeting is not confirmed by the Archbishop or Bishop of the Diocese, the parish, on being notified of the reasons therefor, is to elect a new candidate, and that because Leonty is the Bishop of Chicago he does not care to act in his official capacity as Bishop to pass upon his own acts as chairman of the parish meeting, and makes his reports directly to the Archbishop; that after the election on January 4, 1942, the Reverend Snegireff asked permission to protest to the Archbishop the election of the plaintiff as elder, and the Bishop gave his consent; that the Archbishop forwarded a letter to the Bishop and Reverend Snegireff, which was received January 10, 1942, refusing to confirm the election of P. Michajlowski and confirming Kirik Tanaschuk as elder, and giving his reasons for such disaffirmance. By permission of the Archbishop a special meeting was held on February 1, 1942, to elect a candidate for elder, at which meeting the defendant, Kirik Tanaschuk, was the only candidate nominated for the office of elder, and, there being no other candidates, defendant herein was elected by acclamation. There were no protests, as appears from the minutes of that meeting. As further set forth by defendant, it is provided by paragraph 33 of the Normal Laws that the chairman proposes matters for the discussion of the meeting, guides the discussion, and formulates resolutions, and that, if balloting is necessary, it is done either openly or by secret voting, if one half of the members require it.

The trial court ruled that the decision of the Archbishop being pleaded in the answer and not denied in the reply of the plaintiff, it need not be proved.

The trial court, in giving his opinion and making his decision as we have indicated, followed the rule of law laid down by the Supreme Court, that where the de-

cision depends upon the laws, rules and regulations of the church, and the highest tribunal of the church in America has construed the rules and made decision thereon, the civil courts will adopt and follow such decision.

It appears from this record, and it is contended, that the trial court adopted the correct rule of law in exercising the jurisdiction which was conferred in the *quo warranto* proceeding, and that the Archbishop having disaffirmed the election of plaintiff to the office of elder of the church, the civil courts must accept that decision as the judgment of a legally constituted court.

It will appear from this record that it does not bear out the contention of the plaintiff that he was confirmed by the Bishop at the election of January 4, 1942, and, as stated by the trial court in his opinion, if the person whose authority it was to approve those that were elected did not approve, that is a matter for the church group, and a civil court cannot interfere in their religious matters.

It is contended by the plaintiff that defendant was not elected to the office of elder in accordance with the laws and usages of the organization, and that in paragraph 30 of the canon laws in question it is provided:

"If a parish meeting is called to consider questions which, according to the laws of the State, demand compliance with some preliminary formalities, the latter must be fulfilled with thorough exactitude"

and that therefore the notice required to be given of the meeting is such notice as is required by the statute on commercial corporations. The plaintiff has overlooked the fact, however, that the Holy Trinity Cathedral of Chicago is not a commercial corporation but an association governed by the statutes covering religious corporations. The State requires that in commercial corporations a written or printed notice, stating the place, day and hour of the meeting and, in case

of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten nor more than 40 days before the date of the meeting, either personally or by mail, to each shareholder of record entitled to vote at such meeting. Ill. Rev. Stat. 1941, ch. 32, par. 157.27 [Jones Ill. Stats. Ann. 32.027]. The statute governing religious corporations provides that all elections of trustees after the first, and elections to fill vacancies, may be called and conducted upon such notice and in such manner as may be provided by the rules, usages or by-laws of the congregation, church or society. The Normal Statutes of the church involved herein provide merely that the parishioners shall be duly notified when the meeting is announced. So far as it has come to our knowledge, the priest or minister, in every denomination or creed, makes the announcements of meetings from the pulpit at the regular religious services held by the congregation. In the instant case the plaintiff cannot say that he did not have notice of the meeting held to elect a new trustee, as he was present at the meeting. He must have received the notice that caused his attendance at the time in question. The defendant in his answer alleged that a special meeting of the parishioners was duly called for February 1, 1942 by permission of the Archbishop, for the nomination and election of a new elder, at which meeting the plaintiff was present and participated in the election; that the only candidate named for the office of elder at that meeting was the defendant, and that the minutes of the meeting show that the defendant was unanimously elected, and that no appeal was taken at any time by the plaintiff or anyone in his behalf from the action of the parish meeting.

However, the plaintiff contends that the meeting called for February 1, 1942 was in violation of the terms of orders entered in the superior court of Cook county, but there does not seem to be any question

raised as to the meeting, and at that meeting there were about 80 persons present and Mr. Michajlowski asked permission of the chairman to speak and the matter went to a vote of the congregation who voted to hear him. The plaintiff was present and did not raise the question of a quorum, and as we will have to indicate, he should not be heard for the first time to raise that question in the reviewing court.

It appears too that the plaintiff had a remedy within the church organization by appeal to question the proceedings of the parish meeting on February 1, 1942, and not having exhausted his remedy within the organization he has no standing in a court of law.

It is a rule of law that where the constitution, by-laws or rules and regulations of a voluntary association provide for appeal to a higher tribunal for the redress of any alleged wrongful conduct or irregularity affecting a member, such member will not be permitted to litigate his grievance in a court of law until he has exhausted his remedy within the organization.

One of the cases that has been cited upon this question is the case entitled *People ex rel. Keefe v. Women's Catholic Order of Foresters,* 162 Ill. 78, wherein the plaintiff sought by mandamus to be restored to membership in the society from which she had been expelled by a board of eleven directors known as the "High Court." The constitution and by-laws of the society provided for an appeal from the decision of such "High Court" to the next annual session of the society. The plaintiff in that case took no appeal from the order of expulsion, but filed her petition for mandamus in the court. A copy of the constitution and by-laws was attached to the petition. A demurrer was overruled by the trial court, and defendant elected to stand by the demurrer, and the writ was ordered to issue. On appeal to the Appellate Court the judgment

was reversed with directions to sustain the demurrer and dismiss the petition. The judgment of the Appellate Court was affirmed. The court in its opinion in that case said:

"Therefore, when the charter, constitution or by-laws of the society require a member to first seek redress within the society, and by appeal to carry the question to its highest tribunal, he has no right to bring an action against the society in a court of the land, until he has exhausted his remedy in its tribunals. It follows that a writ of mandamus will not be awarded, where a member of a benefit society, who has been expelled, has a remedy by appeal under the laws of the society, which he has not exercised. (2 Bacon on Ben. Soc. and Life Ins. sec. 442.)"

And further in support of his position in this connection the defendant cites the cases of *People v. Grand Lodge Knights of Pythias,* 166 Ill. 71; *O'Brien v. Rittman,* 176 Ill. App. 237; and *Moody v. Farrington,* 227 Ill. App. 40.

In the case now being considered the defendant in his answer set forth various sections of the Articles of Association and Normal Laws of the church, and after pleading the holding of the meeting of February 1, 1942, and the election of defendant to the office of elder, it is alleged that no appeal was taken at any time by the plaintiff or by anyone in his behalf from the action of said parish at said meeting. This allegation is not denied by the plaintiff.

As a result of the meeting the defendant was elected to the office of elder of the Holy Trinity Cathedral, and at the close of plaintiff's case the defendant by his counsel moved the court to find for the defendant for the various reasons given, one of which was that the plaintiff had not exercised his right of appeal within the organization.

For the reasons that we have stated in the opinion the judgment of the circuit court will be sustained on the ground urged by the defendant that the plaintiff has not exercised his remedy of appeal within the organization before filing this suit.

Therefore the judgment of the circuit court dismissing the petition of plaintiff is in accordance with the law and the evidence, and it is affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.