222 F.2d 100
 Alice M. ANSON et al., Plaintiffs-Appellants,
v.
HIRAM WALKER & SONS, Inc., Defendant-Appellee.
 No. 11378.
 United States Court of Appeals Seventh Circuit.
 April 29, 1955.
 Rehearing Denied May 17, 1955.
 
 Alex L. Sloan, William W. Dunn, Peoria, Ill., for plaintiffs-appellants.
 Eugene R. Johnson, Peoria, Ill., Valentine C. Guenther, Detroit, Mich., Homer W. Keller, Peoria, Ill., for defendant-appellee, Hiram Walker & Sons, Inc. Miller, Westervelt, Johnson & Thomason, Peoria, Ill., of counsel.
 Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.
 LINDLEY, Circuit Judge.
 
 
 1
 Plaintiffs appeal from an order dismissing their suit for breach of contract, in which they sought damages and reinstatement of seniority. According to their amended complaint, they are employed by defendant at its Clark Street plant in Peoria, Illinois. The company owns and operates not only this property, but also one on Edmund Street, and a third, known as the Warehouse plant. The employees at all three places are represented by Distillery Workers' Union, Local No. 55, of Distillery, Rectifying and Wine Workers' International Union of America, but those at each of the three establishments constituted a separate bargaining unit. The Clark Street property was acquired in 1941; in 1943 its employees and defendant agreed that the workers there should have plant seniority from the time when defendant purchased the property. There was to be no interchange of employees between the three operating bargaining units, composed respectively of the three bodies of workmen at the three locations. The collective bargaining contract upon which suit was brought, entered into in May, 1943, was still in effect on July 28, 1954, when the complaint was filed.
 
 
 2
 It was further charged that in May, 1952, defendant devised a scheme to deprive its Clark Street employees of their seniority and accomplished its purpose by transferring all bottling operations on Clark Street to its Edmund Street plant and by announcing that thereafter all such employees on Clark Street no longer had seniority; that defendant attempted to justify this action on the claim that if the defendant should move the Clark Street bottling employees to the Edmund Street plant, it would thereby violate the contractual provision prohibiting interchange of employees between the three units. Plaintiffs, however, averred that the consolidation of operations was not an interchange of employees as mentioned in the contract, which had been made with the "expectation" of continued existence of all bottling operations and that defendant had refused to recognize "plant job seniority." As a result, plaintiffs said they have been deprived of their employment and have been damaged.
 
 
 3
 In paragraph 16 plaintiffs averred that they have pursued "every means available to them according to the terms of said contract in regard to negotiation and arbitration concerning the breach of the contract" and that defendant has "ignored their complaints and requests" and has refused to "reinstate them to their seniority status" and "to reimburse them for their losses." Plaintiffs prayed judgment for damages in the amount of $10,000 for each, or, in the alternative, that they be reinstated in their seniority rights and that each of them have judgment of $5,000 for loss of wages.
 
 
 4
 The collective bargaining agreement was made a part of the complaint. Under it the union was recognized as the exclusive bargaining agent for all defendant's employees. There could be no interchange of employees between the three operating bargaining units, and each employee was to have "plant and departmental" seniority. The contract further provided, inter alia, that if, as a result of changes in operating methods, the union was of the opinion that inequities had resulted in seniority treatment, the company would give full and careful consideration to such changes as the union might propose. The seniority established by the agreement was "plantwide" as distinguished from "company-wide."
 
 
 5
 The court sustained a motion to dismiss for these reasons: (1) failure to state a claim upon which relief could be had; (2) the union was an indispensable party; (3) the suit is against public policy in that, if maintained, it would result in superseding and evading the exclusive bargaining rights of the union and in that a voluntary compromise on the part of the defendant would constitute a violation of and interference with the exclusive collective bargaining rights of the union and of Section 8 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 158; and (4) plaintiffs did not show that they had exhausted their contract remedies. On appeal, plaintiffs contend that the order was erroneous from any and all of the mentioned points of view.
 
 
 6
 In the Labor Management Relations Act, Title 29, U.S.C.A. § 151, Congress has declared its purpose to protect the rights of employees to bargain and to safeguard commerce and promote its flow by removing sources of industrial strife and encouraging practices conducive to friendly adjustment of disputes arising out of differences as to wages, hours, or other working conditions. Obviously Congress hoped to encourage the practice of collective bargaining, by protecting workers' self-organization and their designation of representatives of their own choosing. It sought to aid and encourage employers and their employees to reach and maintain agreements and to make all reasonable efforts to settle all differences by such methods as might be provided in any applicable agreement for determining and settling labor disputes, grievances, wages, rates of pay and hours of employment. Sec. 152(5). Grievances are defined as disputes about working conditions and the interpretation and application of particular clauses of the agreement and alleged violations thereof. In other words, Congress has set up machinery looking to the peaceable settlement of all controversies regarding wages, rates of pay, working hours, seniority and grievances as to all matters growing out of employment, and prescribed an exclusive remedy for settlement of all labor disputes. It has attempted to substitute for physical or legal warfare, peaceful negotiation. Thus, a designated union becomes the exclusive bargaining agent of the employees, and its contract with the employer governs the employees' individual hiring contracts.
 
 
 7
 With this policy in mind, the agreement upon which plaintiffs sue provides for the settlement of grievances in an orderly fashion by presentation to the company by the individual, and, if agreement is not reached, then by negotiation with the union concerning the same. The scheme of the legislation is that employer and employee, bargaining freely, shall abide by the contract and employ only the remedies provided by the Act for any violation thereof. With these general principles in mind we approach the essential elements involved in this appeal.
 
 
 8
 As we have observed plaintiffs grounded their action on the collective bargaining agreement, which they averred was entered into for the benefit of plaintiffs and under which, they further averred, each employee may sue directly. Obviously, their rights are to be determined by their agreement. As said in J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, at page 336, 64 S.Ct. 576, 579, 88 L.Ed. 762: "The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits, any more than a shipper can contract away the benefit of filed tariffs, the insurer the benefit of standard provisions, or the utility customer the benefit of legally established rates." Consequently, the terms of the agreement become part of the individual contracts of employment, not because of the contract of the parties, but because the law says they shall, no matter how the parties may feel about the matter. Association of Westinghouse v. Westinghouse Electric Corp., 3 Cir., 210 F.2d 623, at page 627, certiorari granted 347 U.S. 1010, 74 S.Ct. 868, 98 L.Ed. 1134. As we said in In re Chicago & E. I. R. Co., 7 Cir., 94 F.2d 296, at page 299: "The intention of the parties must be found in the language used to express such intention; and if the court finds as a matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision." Consequently, the rights and remedies of the parties are to be determined from the plain unambiguous words of the contract upon which suit is brought, unattended by averments of other intentions or contemplations. The unequivocal words of the agreement must speak for themselves. Plaintiffs insist, however, that, despite the plain words of the agreement and the statute fixing their remedies, they have a right to maintain this suit for breach of contract.
 
 
 9
 In Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, where an employee sued his employer who was subject to the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for wrongful discharge, the court held that the plaintiff had a right to maintain the suit, irrespective of the provisions of the Act, provided the law of the state in which the suit was brought permitted such suits without showing compliance with or exhaustion of administrative remedies and, obviously, that whether the state law so provided was to be determined from the law of the state. The court then examined the law of Missouri and determined that under it an employee must exhaust his contractual or administrative remedies before he can sustain an action for a wrongful discharge. Accordingly, having found that the terms of employment were embraced in a complete code for the adjustment of such disputes and that the employee had made no substantial attempt to follow the procedure prescribed for remedy for wrongful discharge, the Court concluded: "The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case [Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795], that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law. On the other hand, if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so." 345 U.S. at pages 661-662, 73 S.Ct. at page 910.
 
 
 10
 In Illinois it is well settled that where a member of a union or other association, brings suit and it appears that his remedies are governed by laws and regulations of the association to which he belongs, he must, before he can succeed, show that he has exhausted all of the remedies provided by those laws and regulations. Engel v. Walsh, 258 Ill. 98, 101 N.E. 222, 45 L.R.A.,N.S., 353; Pacaud v. Waite, 218 Ill. 138, 75 N.E. 779, 2 L.R.A.,N.S., 672; People ex rel. Waldeck Lodge v. Grand Lodge Knights of Pythias, 166 Ill. 71, 46 N.E. 768; People ex rel. Keefe v. Women's Catholic Order of Foresters, 162 Ill. 78, 44 N.E. 401; Keel v. Illinois Terminal Railroad Co., 346 Ill.App. 169, 104 N.E.2d 659; People ex rel. Mich. Ajlowski v. Tanaschuk, 317 Ill.App. 130, 45 N.E.2d 984. This court, in United Protective Workers of America v. Ford Motor Co., 7 Cir., 194 F.2d 997, held that ordinarily a complaint by an employee must show that plaintiff followed the grievance procedure provided for in the collective bargaining agreement. Without such a showing plaintiffs may not resort to the courts for relief. Consequently, under Transcontinental & Western Air, Inc., v. Koppal, supra, and the Illinois governing law, plaintiffs, even if they sued for wrongful discharge, could not maintain their action unless they showed exhaustion of their remedies under the collective bargaining agreement.
 
 
 11
 It is to be borne in mind, however, that plaintiffs were not suing for wrongful discharge, but were seeking to enforce the provisions of their collective bargaining contract, which prescribed the remedy for presentation of grievances. Their averment in this respect is that they have pursued "every means available to them according to the terms of said contract in regard to negotiation and arbitration concerning the breach of contract", but that the defendant has ignored "their complaints and requests and has continued to refuse to reinstate them to their seniority status", and "to reimburse them for the losses they have incurred." At most, these are words of dubious meaning. They include no averment that plaintiffs have invoked the provisions for settlement of grievances. On the contrary, they have presented their grievances directly to the court without averring compliance with the contractual provisions or with statutory provisions providing remedies for grievances. The "complaints and requests" are not defined. We cannot read into them an explicit averment that the employer has refused to entertain the grievances of which plaintiffs now complain. There is no averment that the union negotiated with the employer concerning those grievances as contemplated by the contractor or that the employer refused to negotiate. Yet by the contract the union was the exclusive bargaining agent of plaintiffs. We cannot attribute to the equivocal words of the complaint any connotation or implication that plaintiffs have attempted to exhaust or have exhausted their remedies created by their bargaining agreement for disposing of their grievances.
 
 
 12
 In that respect the case is distinguished from United Protective Workers of America v. Ford Motor Co., 7 Cir., 194 F.2d 997, for there it was averred that the employer had refused to negotiate with regard to the remedies provided by the collective bargaining agreement. Here there is no such averment. This omission, in itself, we think, was fatal, on the specific grounds raised by defendant's motion to dismiss. As pointed out in Harrison v. Pullman Co., 8 Cir., 68 F.2d 826, at page 827: "Appellant in terms sues because of an alleged breach of this contract, and, to prevail, he must show that he has brought himself within its terms and has been unable to secure a satisfactory adjustment by the means therein expressly provided. This he has failed to do, and for this reason he is unable to present his case in court as a justiciable controversy."
 
 
 13
 The amended complaint discloses its own insufficiency. Plaintiffs sue for breach of contract, because they say they have been wrongfully treated under their agreement with the employer. Under that contract they have the right to present grievances. If, at the conclusion of the negotiations, the employer is found to have acted wrongfully, a complaint may follow before the National Labor Relations Board to establish an unfair labor practice and to determine what reparation, if any, is due them, and in case of dissatisfaction with the Board's decision, review may be had in the United States Court of Appeals. Thus, Congress has designed an exclusive method for the hearing and determination of labor disputes, with appropriate remedies. It has not vested in the District Courts concurring jurisdiction over such matters. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Sanco Piece Dye Works, Inc., v. Herrick, D.C., 33 F.Supp. 80. Clearly plaintiffs are attempting to by-pass the remedies created for them by Congress, and thus to circumvent the plain mandate of Congress that jurisdiction in such matters be vested exclusively in the National Labor Relations Board. This we think they may not do. They must avail themselves of the remedies provided by Congress, the adequacy of which can no longer be questioned. Pratt v. Oberman & Co., 8 Cir., 89 F.2d 786. It follows, we think, that irrespective of the averments of paragraph 16 of the amended complaint, it is clear that plaintiffs are invoking the jurisdiction of a court without pursuing their remedies under the National Labor Relations Act. To pursue such a course of action, is to do violence to the whole tenor of the Act, and to its declared purposes. It was the legislative intent that the remedies supplied by the Act and by a collective bargaining contract made in pursuance thereof should govern the parties' rights and prevent a hearing in any court, until the provisions of the Act and the contract shall have been complied with. Cf. Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. To entertain the suit would in our opinion violate the public policy enunciated by the Act.
 
 
 14
 In view of our conclusions, it is unnecessary to consider other points raised by the parties.
 
 The judgment is
 
 15
 Affirmed.