Robert L. Payne, Plaintiff-Appellant, v. Pullman Company, Defendant-Appellee.

Gen. No. 46,982.

First District, Second Division.
February 19, 1957.
Released for publication April 2, 1957.

Milton P. Webster, Jr., of Chicago, for appellant.

Erwin W. Roemer, and Donald S. Dugan, of Chicago, for appellee; Herbert S. Anderson, Marshall R. Wendt, James A. Velde, and Laurence A. Carton, all of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

The question presented on this appeal involves the right of a sleeping car porter formerly employed by defendant (a carrier subject to the Railway Labor Act) to sue for damages for alleged wrongful termination of his contract although he has not exhausted all the remedies provided in the collective bargaining agreement of his union and in the Railway Labor Act. The trial court held against plaintiff and dismissed the suit.

Under the terms of the collective bargaining agreement between defendant and the Brotherhood of Sleeping Car Porters, the right of an employee to a fair and impartial hearing before discharge is recognized and provision is made for a hearing before the district representative of the carrier. If the decision of the district representative is not satisfactory, the employee may within twenty days appeal to the assistant to the vice-president in Chicago or to such other operating officer as may be designated. The contract then provides that: "Any further appeal in accordance with provisions of the Railway Labor Act shall be taken within thirty (30) days from date decision is rendered." The Railway Labor Act creates the National Railroad Adjustment Board for the purpose of deciding disputes between carriers and their employees. (45 U.S.C., Sec. 153 (1952).) The Board is composed of four divisions. The third division is the one empowered to act in respect to the contro-

versy here involved. This division is composed of ten members, five selected by the carriers and five by the national labor organizations. In case of deadlock a neutral person is to sit with the division.

Plaintiff was charged with making advances toward a woman passenger, and in accordance with the provisions heretofore recited was given a hearing before the proper official. He was ordered discharged and took an appeal to the Assistant Vice-President, who sustained the order. He then abandoned his right to a further appeal and started this suit.

The question of the right of an aggrieved railroad employee upon discharge to resort to the state courts for relief by way of damages for breach of contract has been the subject of litigation for some years, and three cases have quite definitely established the law. Moore v. Illinois Central R. Co., 312 U. S. 630, 634; Slocum v. Delaware L. & W. R. Co., 339 U. S. 239; Transcontinental and Western Air, Inc. v. Koppal, 345 U. S. 653, 654, 661. In Moore v. Illinois Central R. Co., supra, the plaintiff sued in a Mississippi state court for damages for discharge contrary to provisions of a collective bargaining agreement. The parties were subject to the Railway Labor Act. The case was transferred to the federal court. The plaintiff recovered a judgment. Upon appeal, the United States Supreme Court, while reversing for reasons not relevant here, said that the plaintiff was not required to pursue his remedy by an appeal to the Adjustment Board as a prerequisite to a suit for wrongful discharge. However, the collective bargaining agreement in that case did not provide for appeal to the Adjustment Board. In Slocum v. Delaware L. & W. R. Co., supra, the railroad filed suit for a declaratory judgment interpreting a collective bargaining agreement with respect to a jurisdictional dispute between unions. The court held that the Adjustment Board

had *exclusive* jurisdiction. It distinguished the Moore case on the ground that the Adjustment Board was best designed to handle such jurisdictional disputes. In its opinion the court said:

"The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems."

Transcontinental and Western Air, Inc. v. Koppal, supra, is the last word on this question. In that case the plaintiff was employed in Kansas City, Missouri, by a common carrier subject to the Railway Labor Act. As in the instant case, the agreement with the union provided for a fair hearing with two appeals, similar to those in the case before us. The plaintiff was charged with abuse of a sick leave provision and after a hearing was told he would be discharged, whereupon he was permitted to resign "under protest." He took no appeal, as provided by his employment contract, but instead instituted suit in the federal court. The case was submitted to a jury which returned a verdict of $7,500. The trial court set aside the verdict and dismissed the complaint on the ground that the respondent had failed to exhaust the remedies prescribed in his employment contract. The Court of Appeals reversed the trial court, and an appeal was taken to the Supreme Court of the United States, which reversed the Court of Appeals and upheld the trial court. The Supreme Court held that the substantive law of Missouri determined the requirements of the cause of action and the interpretation of the contract (Erie R. Co. v. Tompkins, 304 U. S. 64;

110

Klaxon Co. v. Stentor Electric Mfg. Co., 313 U. S. 487) and that under the law of Missouri (as distinguished from the law of Mississippi where the Moore case was tried) an employee must exhaust the administrative remedies under his contract of employment in order to sustain his cause of action. The order dismissing the suit was affirmed.

██ The net effect of these cases was to define an area within which the jurisdiction of the Railway Adjustment Board was exclusive and another area within which resort could be had to the courts. When in a proper case resort is had to a state court, it becomes subject to such defenses as are lawful in that state. This includes questions such as are here involved, that is:

1. Whether plaintiff was required to exhaust the remedies provided in the agreement, and
2. Whether the agreement, properly interpreted, provided a complete system of arbitrament of the provisions for discharge, and whether the decisions thereon are final and exclude resort to a court.

We must apply Illinois law to those questions.

██ While the doctrine of exhaustion of remedies is well established in Illinois, our Supreme Court has never specifically passed upon it in an employer-employee dispute. The Court of Appeals for this circuit, however, has found and applied the Illinois law in a labor case, Anson v. Hiram Walker & Sons, 222 F.2d 100. In that case, employees of a distilling company sought damages for breach of a collective contract of employment and reinstatement of their seniority rights. The court, after finding that plaintiffs had not exhausted their remedies, said, p. 104:

"In Illinois it is well settled that where a member of a union or other association, brings suit and it appears that his remedies are governed by laws and regula-

tions of the association to which he belongs, he must, before he can succeed, show that he has exhausted all of the remedies provided by those laws and regulations. (Citing cases.) This court, in United Protective Workers of America v. Ford Motor Co., 7th Cir., 194 F.2d 997, held that ordinarily a complaint by an employee must show that plaintiff followed the grievance procedure provided for in the collective bargaining agreement. Without such a showing plaintiffs may not resort to the courts for relief. Consequently, under Transcontinental & Western Air, Inc. v. Koppal, supra, and the Illinois governing law, plaintiffs, even if they sued for wrongful discharge, could not maintain their action unless they showed exhaustion of their remedies under the collective bargaining agreement."

Plaintiff in the instant case asserts that this is dicta. With respect to this, we said in Larson v. Johnson, 1 Ill.App.2d 36, 40, 116 N.E.2d 187:

"If the opinion expressed on a legal question is one casually reached by the court on an issue unrelated to the essence of the controversy or based on hypothetical facts, then it is *obiter dictum*. If, however, the question involved is one of a number of legal issues presented by the facts of that particular case, the court's decision on that question is not *dictum* even though it be the last ground of many decided by the court, all in support of its final conclusion. (Goodhart, 40 Y.L.J. 161, 180). It is often stated that all except that which is necessary to the decision of a case is *obiter dictum*. This is misleading, for nothing but the bare finding of the court is absolutely necessary to its decision as between the parties. For the purpose of legal precedent, we must look to all the issues presented by the facts of the case and to the legal principles applied by the court in the final determination

112

of those issues. Our Supreme court has made a distinction between judicial *dictum* and *obiter dictum*, meaning that a legal principle deliberately passed upon by a court establishes a precedent. Scovill Mfg. Co. v. Cassidy, 275 Ill. 462, 470."

We do not consider the language in Anson v. Hiram Walker & Sons, supra, obiter as to the point in question here.

In Keel v. Illinois Terminal R. Co., 346 Ill. App. 169, 104 N.E.2d 659 (1953) a railroad employee was discharged after a hearing, and without taking an appeal pursuant to his collective bargaining agreement sued for reinstatement and damages for wrongful discharge. He obtained a judgment which was reversed and the cause was remanded on a ground not relevant to our present inquiry. After that opinion the Koppal case was decided, and defendant in his brief advises us that the trial court dismissed the Keel suit on the ground that under the law of Illinois the plaintiff could not sue in this state until he had exhausted his administrative remedy. (Keel v. Illinois Terminal R. Co., Circuit Court of Madison County, No. 6414 Law (1954).)

In Illinois the doctrine has been applied in cases involving members of labor unions seeking relief against penalties or expulsion from the union. Engel v. Walsh, 258 Ill. 98, 101 N.E. 222 (1913); Moody v. Farrington, 227 Ill. App. 40 (1922). The doctrine has also been applied in suits brought by members of voluntary associations. The People v. Chicago Board of Trade, 45 Ill. 112 (1867); The People v. Women's Catholic Order of Foresters, 162 Ill. 78 (1896); Board of Trade v. Nelson, 162 Ill. 431 (1896); Pacaud v. Waite, 218 Ill. 138, 75 N. E. 779 (1905). It has been applied to members of religious organizations. People ex rel. Michajlowski v. Tanaschuk, 317 Ill. App. 130, 45 N.E.2d 984 (1942). It has also been applied to

113

administrative bodies such as utility and zoning commissions. Bright v. City of Evanston, 10 Ill.2d 178, 139 N.E.2d 270; City of Chicago v. O'Connell, 278 Ill. 591, 116 N. E. 210 (1917); Bistor v. McDonough, 348 Ill. 624, 118 N. E. 417 (1932); Colton v. Commonwealth Edison Co., 349 Ill. App. 490, 111 N.E.2d 363 (1953).

The doctrine has been applied to labor cases in other states either by the state court or by the federal court on a finding that such is the law of those states. Cone v. Union Oil Co. of California, 129 Cal.App.2d 558, 277 P.2d 464 (1954); Harrison v. Pullman Co., 68 F.2d 826 (C.A. 8, 1934) (applying the Missouri law); Thompson v. St. Louis-San Francisco Ry. Co., 113 F. Supp. 900 (D.C. Ala. 1950) (applying the Alabama law); Mayfield v. Thompson, 262 S.W.2d 157 (Mo. App. 1953); Barker v. Southern Pacific Co., 214 F.2d 918 (C.A. 9th, 1954) (applying the California law).

██ Counsel for plaintiff argues that the Illinois courts have not applied the doctrine of exhaustion of remedies specifically to a dispute between employer and employee where a collective bargaining agreement was involved, and that the doctrine should not be extended to include such disputes. Collective bargaining agreements are not in this respect *sui generis* but are subject to the same rules of practice and to the same principles of procedure and interpretation, in a general sense, as other contracts. Nothing here presented would justify a departure from the general principle with respect to exhaustion of remedies. The facts in Transcontinental and Western Air, Inc. v. Koppal, 345 U. S. 653, 654, 661, are substantially the same. We do not know whether such an argument was made in that case. It does appear, however, that in its opinion in that case the United States Supreme Court cited Reed v. St. Louis S. W. R. Co., (Missouri) 95 S.W.2d 887, which involved a railroad employee,

and in a subjoined note the court refers to a quotation relied upon in the Reed case as follows (p. 658) :

" '. . . It is well settled that, where contracting parties either agree or are required by law to resort to a designated tribunal for the adjustment of controversies, they must exhaust such remedy before resorting to the courts for redress.' Glass v. Hoblitzelle, 83 S.W.2d 796, 802 (Tex. Civ. App.). See also Bell v. Western R. Co., 228 Ala. 328, 153 So. 434."

Glass v. Hoblitzelle, supra (1935), referred to in the note, was not an employee case but a suit between the owner of a "second run" motion picture theatre and the owners of "Class A" or "first run" theatres for an interlocutory order denying an injunction. The National Recovery Act was in effect, and the court held that the grievance should have been presented to the local grievance board organized thereunder. It thus appears that this case, although not involving a collective bargaining agreement, was considered by the Supreme Court of Missouri and the Supreme Court of the United States as authority to support the application of the doctrine of exhaustion of remedies.

Plaintiff has relied on Jorgensen v. Pennsylvania R. Co., 38 N. J. Super. 317, 118 A.2d 854, 866 (1955). While points of distinction are made by defendant, we believe the principal basis for the decision was the holding that in New Jersey the law did not require a plaintiff to exhaust his administrative remedies. Under that decision a discharged employee may pursue his contract remedies until he determines reinstatement to be hopeless. Then he may pick another forum. This decision is contrary to the preponderance of authority and to a fair interpretation of the contract.

115

■ Plaintiff makes the point that an appeal to the Railway Adjustment Board is not a remedy created by the collective bargaining agreement, but is one granted to him by law and is therefore not a prerequisite to a suit for damages. The point he makes is better illustrated by his distinction of the two cases involving Illinois law, Anson v. Hiram Walker & Sons, 222 F.2d 100, and Keel v. Illinois Terminal R. Co., 346 Ill. App. 169, 104 N.E.2d 659 (1953). He says that in the first case suit was for enforcement of the collective bargaining agreement and that the National Labor Relations Board had exclusive jurisdiction. In the second case (Keel) he says that the collective bargaining agreement provided that in the event of disagreement "the case shall then be handled in accordance with the Railway Labor Act." He stresses the use of the word "shall." We do not see the validity of the distinction. Clearly, neither the statute nor the agreement intended to make the unreasonable requirement that an employee must pursue an appeal whether he desired to do so or not. The real question is whether it was the intention of the parties that an employee could discontinue proceedings under the collective bargaining agreement at any point where he determines he could not succeed and then resort to a law suit in a state court. Plaintiff argues that this is in effect what Transcontinental and Western Air, Inc. v. Koppal, supra, holds. We do not so construe it. What was under consideration in the Koppal case was whether the doctrine of exhaustion of remedies was applicable to a suit of this character. The court held it was if the state law applicable so required. In other words, nothing in the federal law operated to supersede the state law. But having taken the case, the state court has the power and duty to interpret the contract, to determine whether it was intended that the employee should be restricted, with respect to his

116

right to a fair hearing, to the procedure set up in the contract and the Railway Labor Act or whether he could do what he here contends he can, that is, proceed under the contract to the point where he feels it futile to go further and then switch his forum and his remedy.

▆ The appeal procedure provided in the Railway Labor Act is stated in permissive language. Plaintiff urges that for this reason the Illinois doctrine of exhaustion of remedies does not render mandatory recourse to the Railroad Adjustment Board. The exercise of a right to appeal is always permissive, but under the doctrine of exhaustion of remedies the course to be taken in the exercise of the right is mandatory. The People v. Women's Catholic Order of Foresters, supra, at p. 80; Engel v. Walsh, supra, at p. 105; Sweitzer v. Industrial Commission, 394 Ill. 141, 147, 68 N.E.2d 290, 294 (1946). We think the language of the court in the Sweitzer case clearly states the Illinois law on this point (Sweitzer v. Industrial Commission, supra, p. 147):

"If defendant in error was dissatisfied with the arbitrator's decision, he should have sought a review by the Industrial Commission. Having failed so to do, he cannot by-pass the commission and obtain, for all practical purposes, a direct review by the circuit court. In short, he should have exhausted the administrative remedies afforded him by the statute before resorting to the courts. 42 Am. Jur., Public Administrative Law, sec. 197; Bistor v. McDonough, 348 Ill. 624.

"The argument is advanced by defendant in error that section 19 does not expressly require a review of the decision of an arbitrator by the Industrial Commission as a prerequisite to a review by the circuit court. Statutes should be construed according to their intent and meaning. A situation which is within the object, spirit and the meaning of a statute is regarded

117

as within the statute although not within the letter. (People ex rel. Simpson v. Funkhouser, 385 Ill. 396; Burke v. Industrial Com., 368 Ill. 554). We are of the opinion that the plain intention of section 19 of the Workmen's Compensation Act is to make a review of an arbitrator's decision by the Industrial Commission a condition precedent to a review by the circuit court."

 But if the law were otherwise, we are of the opinion that the collective agreement limits the plaintiff to the procedure provided for in the agreement. The purpose of these provisions in a collective bargaining agreement are well known. Without contractual protection an employee could lose his means of livelihood at the whim of the employer. There was and is no protection in law save that which the contract provides. The cruelty and severity of an arbitrary and unfair discharge came to be recognized, and to mitigate this evil the collective bargaining agreement set up a complete plan. It recites in general terms the requirements for the discharge of an employee who has passed the probationary period. The employer's right to discharge for just cause is recognized and the employee's right to continuance of his employment, unless there is just cause for his dismissal, is also recognized. The provisions are not, however, the kind which would be written into a contract contemplating a trial by court or jury. They are couched in general and ambiguous terms, but are given practical implementation by the establishment of a complete system of arbitrament, that is, a fair hearing before an operating official, an appeal to a superior of high rank and, finally, to a body composed of ten members—five union and five carriers, and in the event of a deadlock, an eleventh neutral. It is a fair arrangement for the protection of plaintiff's rights. To interpret this agreement to mean that an employee could, at any stage of the proceedings, discontinue

118

such proceedings and still resort to the courts would be unreasonable. We conclude that a fair interpretation of the contract is that the provisions with respect to grounds for discharge are confined in their implementation to the plan of arbitrament established by the contract.

Plaintiff argues that it is unfair to require him to use the Railway Labor Act because final decision would be in the hands of "lay administrators" and beyond the scope of judicial review. To many this may appear to be a boon. Eminent jurists and lawyers at times have felt that no misfortune, short of smallpox or hydrophobia, is greater than involvement in serious litigation. The long delays, the cumbersome machinery, and the great expense combine to make our judicial system the subject of bitter denunciation. To hold that this should be the resort to which a plaintiff could go for a fresh start after an adverse finding in a plan of arbitrament which provides for a hearing and two appeals would be piling Ossa on Pelion. Even those of us who have faith in our profession and its ability ultimately to solve the problems which beset it must realize that laymen have ample justification for seeking to avoid becoming enmeshed in its toils.

Judgment affirmed.

ROBSON, P. J. and McCORMICK, J., concur.