Harry Hill, a/k/a Tiny Hill, Appellant, v. Mercury Record Corporation, a Delaware Corporation, et al., Mercury Record Corporation, Appellee.

Gen. No. 47,919.

First District, Third Division.

June 29, 1960.

351

■■■■■■■■■■■

■■■■■■■■■■■

■■■■■■■■■■■

Blumberg, Smith, Wolff and Pennish, of Chicago (Sanford I. Wolff, Melvin Gray, and George S. Feiwell, of counsel) for appellant.

Goldberg and Levin, of Chicago (Mayer Goldberg, Leonard L. Levin and Burton Berger, of counsel) for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an order entered in the Superior Court of Cook County dismissing plaintiff's complaint on the ground the court lacked jurisdiction in the case since the plaintiff had not exhausted the remedies provided in the bylaws of the American Federation of Musicians, of which the plaintiff was a member, and of which the Mercury Record Corporation was a licensee. By a provision of the contract the bylaws were made a part thereof.

The plaintiff's complaint, in three counts, was filed on August 25, 1956. Count II was dismissed by order of court and is not before us for consideration. The first count of the complaint prays damages for breach of a recording contract entered into between Harry Hill (hereafter referred to as plaintiff) and the Mercury Record Corporation (hereafter referred to as defendant). The third count prayed an accounting of royalties allegedly earned by the plaintiff and due from the defendant. Attached to the complaint was an agreement by which the defendant agreed to employ the plaintiff and certain musicians under his leadership to make a number of phonograph records for

the defendant, a phonograph recording manufacturer and sales organization. The defendant agreed to pay plaintiff a sum certain for each phonograph record performed on and produced, and in addition, to pay plaintiff a royalty for each record sold. It was an exclusive contract for two years which prohibited plaintiff from performing for any other phonograph record producer, and guaranteed that at least 32 records would be produced and released on the market during the term of the agreement.

Subsequent to the execution of the agreement only four records were produced. Plaintiff claims that he performed all his obligations under the agreement and that he held himself ready, willing and able to perform as provided in the contract, but that the defendant breached its obligations to the plaintiff's damages.

The defendant filed an answer. The court, on motion of the defendant (together with other defendants named in Count II), struck Count II of the complaint. The plaintiff filed an amended count, which was also stricken. Count II was then abandoned by plaintiff. The defendant filed an answer on September 17, 1956, to Counts I and III of the complaint. On October 16, 1958, the defendant filed a motion to withdraw its answer and to dismiss the suit on the ground that the court had no jurisdiction of the subject matter of the action, and filed an affidavit by one of the attorneys in support thereof, setting up in substance that the agreement between the parties contained a paragraph to the effect that the "rules, laws and regulations" of the American Federation of Musicians and of the Local in whose jurisdiction the musicians performed were made a part of the agreement; that the bylaws of the American Federation of Musicians in part provided as follows:

"Article 9, Section 1. A member of the Federation shall at all times have the right to sue or

353

make claim through his Local Union or the Federation, as the case may be, any leader, agent, employer or whoever it may be, for any amount, resulting from failure to receive his salary, for violation of contract or agreement, or for any difference in price actually received by him for an engagement and the price established by his Local Union or the Federation for same."

"Article 9, Section 7, paragraph (A), sub-section (1) If any such grievance involves or relates to booking agents, traveling bands, recording, radio or television activities, or any other matter within the sole competence of the Federation pursuant to its Constitution, By-Laws, rules or resolutions, as distinguished from matters within the competence of the locals thereof, it shall be adjudicated and determined only by the International Executive Board of said Federation . . . ."

"Article 9, Section 7, paragraph (B), sub-section (1) The adjudication of grievances before the Board under the provisions of this Section 7 shall be the sole and exclusive remedy for breach of contract by employees (or performers of services), employers (or purchasers of services) and booking agents."

(These are the only sections of the bylaws set out in the record.) The affidavit further states that the plaintiff was a member of, and the defendant was duly licensed by, the American Federation of Musicians.

The court on February 20, 1959, entered an order permitting the defendant to withdraw its answer previously filed and dismissing the cause for want of equity. From that order an appeal was taken to the Supreme Court, which transferred it to this court. At the time of entering the order the trial court rendered a written decision, in which he stated:

354

"The court has concluded that the specific sections of the By-Laws of the American Federation of Musicians which are set forth in the affidavit appended to defendant's motion to dismiss are valid and binding upon the parties hereto. The written contract between these parties specifically incorporates therein all of these By-Laws. Plaintiff has not exhausted the remedies provided in the By-Laws and he has not attempted to utilize the grievance procedure therein provided. As a result, under the doctrine of exhaustion of remedies which has been long adhered to by the courts of Illinois, plaintiff cannot obtain relief from the court at this time."

 At common law a general agreement in an executory contract to submit to arbitration any controversy which may arise under it is contrary to public policy and void inasmuch as it is an effort to divest the courts of their jurisdiction. Corbin on Contracts, vol. 6, sec. 1433; 6 C.J.S., Arbitration and Award, sec. 29a; 3 Am. Jur., Arbitration and Award, sec. 31; 3 I.L.P., Arbitration and Award, sec. 3; Cocalis v. Nazlides, 308 Ill. 152, 158, 139 N. E. 95, and cases therein cited. It has further been held that at common law, where the parties have actually submitted an existing controversy to arbitrators selected by them, they still may withdraw the matter from arbitration until an award has been made, and under the Illinois statute dealing with arbitration and awards (ch. 10, Ill. Rev. Stat.), before the passage of the amendment (sec. 3) making the submission irrevocable, the common law rule prevailed. Pickrel v. Doubet, 239 Ill. App. 553.

██ ██ It is not contended by either party that the instant case came under the terms of the Illinois arbitration statute. It is true that the courts at common law approved the submission of controversies to ar-

355

bitration to avoid the expense, formalities and delay of litigation; but in spite of such approval the courts would not enforce an agreement to arbitrate even a presently existing controversy, and such agreement was revocable by either of the parties until an award was actually made by the arbitrators. It has been held in this state that a binding agreement relating to future controversies may be made requiring that the determination of some fact be made by arbitrators or appraisers as a condition precedent to the bringing of a suit (Cocalis v. Nazlides, supra), and that rule is stated in 6 C.J.S., Arbitration and Award, sec. 29b to be generally prevailing. The rule is criticized in Corbin on Contracts, vol. 6, sec. 1435. It is also the rule that such a provision must make such arbitration a condition precedent to the right of action either expressly or by clear implication, and that if this is not done, the arbitration provision will be considered as merely a collateral matter which cannot be pleaded in bar to an action on the principal contract. 6 C.J.S., Arbitration and Award, sec. 29b; 3 Am. Jur., Arbitration and Award, sec. 35; Corbin on Contracts, vol. 6, sec. 1436; Niagara Fire Ins. Co. v. Bishop, 154 Ill. 9, 39 N. E. 1102.

■ ■ It is also the rule that "The courts will not interfere with the internal affairs of an unincorporated association so as to settle disputes between the members, or questions of policy, discipline, or internal government, so long as the government of the society is fairly and honestly administered in conformity with its laws and the law of the land, and no property or civil rights are invaded, and, under such circumstances, the decision of the governing body or established private tribunal of the association is binding and conclusive and not subject to review or collateral attack in the courts." 7 C.J.S., Associations, sec. 34a; 4 Am. Jur., Associations and Clubs, secs. 17, 18

and 19. In Cocalis v. Nazlides, supra, it is said at p. 157:

> "It is also competent in the case of voluntary organizations and societies to require obedience to rules and regulations as a condition of membership and to enforce the same. Members may make valid and binding agreements to submit questions in dispute connected with their membership to arbitration, as provided by the articles of association."

This rule has been applied to associations, clubs, churches and labor unions. Werner v. International Ass'n of Machinists, 11 Ill.App.2d 258, 137 N.E.2d 100; Michel v. Carpenters' Dist. Council of Madison County, Ill., 12 Ill.App.2d 510, 140 N.E.2d 299; People ex rel. Michajlowski v. Tanaschuk, 317 Ill. App. 130, 45 N. E. 984; Payne v. Pullman Co., 13 Ill. App.2d 105, 141 N.E.2d 83; People v. Women's Catholic Order of Foresters, 162 Ill. 78, 44 N. E. 401; Engel v. Walsh, 258 Ill. 98.

There is grave doubt in our minds as to whether the provisions in the contract, which did not specifically set out or refer to the clauses concerning arbitration in the American Federation of Musicians bylaws, are sufficient to import those clauses into the contract. In Weiner v. Mercury Artists Corp., 130 N.Y.S.2d 570, where a contract in stronger terms than the one before us made the bylaws of the American Federation of Musicians a part of the contract, the court, in holding that the parties had not made a definitive contract to arbitrate, says: "The rules thus allegedly incorporated by reference into the simple one page contract between the parties consist of a 207 page printed booklet in which somewhere between pages 62 and 66 of this bulky document, there is a wordy and at least as to the parties involved, a somewhat vague provision

for arbitration to be determined, however, by the International Executive Board of the Federation." The court cites Riverdale Fabrics Corp. v. Tillinghast-Stiles Co., 306 N. Y. 288, 118 N.E.2d 104, where the court held that while one may by contract bargain away his rights to resort to the courts in matters which might be the subject of civil action, the agreement to do so will not be extended by construction or implication, and the court says: "The intent must be clear to render arbitration the exclusive remedy; parties are not to be led into arbitration unwittingly through subtlety." That case was brought under the Arbitration Act of New York, which provides that a contract to submit future disputes to arbitration is valid. There is no such provision in the Illinois Arbitration Act.

In the case before us the plaintiff urges that the clause in the bylaws, if it could be considered as binding on the parties, makes arbitration the exclusive remedy which can be pursued by either party in the case of any dispute which may arise in the future concerning the subject matter of the contract. The defendant insists that the contract, taken with the bylaws, does not involve compulsory arbitration, nor does it afford an exclusive remedy, and that all that is required is that the parties exhaust their remedies under the bylaws of the American Federation of Musicians before commencing an action in court. Such a provision, as we have pointed out, will be enforced by the courts.

In the bylaws of the American Federation of Musicians referred to in the contract before us it is provided that the adjudication of grievances "shall be the sole and exclusive remedy for breach of contract." That provision neither clearly states nor raises the implication that the determination made by the board is a condition precedent to bringing a legal action. It

specifically provides for an exclusive and single remedy, and consequently falls squarely within the common law rule previously referred to, and in Weiner v. Mercury Artists Corp., supra, it is so interpreted.

The defendant in its brief states that the bylaws of the American Federation of Musicians contained complicated machinery for the submission of all grievances by the International Executive Board of the Federation, that the adjudication of grievances before that board is an exclusive remedy for the violation of any contract or agreement entered into by the members of the federation, and that adjudication of grievances before the board is the sole remedy by performers for breach of contract. It further says: "Although not shown in the abstract, the by-laws provided specifically that courts of the state in which any party resides shall have jurisdiction with reference to any matter arising out of any adjudication made by the Board including but not limited to confirmation and enforcement of any award made by the Board." In its reply brief the plaintiff argues that any judicial review would be limited to fraud, collusion or substantial errors appearing on the face of the award, and that the bylaws are clearly designed to set up a mechanism for full and final adjudication of grievances with which the federation is concerned. There is nothing in the record to support the argument of the plaintiff or the defendant and we could properly disregard it. Even if there is a provision in the bylaws permitting a review by the courts of a decision of the arbitrators, that review, under the general rules of law, is limited as indicated by the plaintiff.

■ We hold that the provision of the contract referring to the bylaws of the American Federation of Musicians, together with the bylaws, is an agreement involving a compulsory arbitration and conse-

359

quently void. The defendant and the trial court take the view that it was not such an agreement but that it merely provided for a determination before the board as a condition precedent to the bringing of suit. If we would assume that this position is correct, the defendant at the outset could demand that the plaintiff exhaust his remedies under the by-laws before he could bring an action, and if he failed so to do the defendant on that ground could urge that the cause should be dismissed. However, any conduct of the parties inconsistent with the provision or which might reasonably be construed as showing that they did not intend to avail themselves of such provision is a waiver and will prevent the party from setting it up as a defense. Notation in 117 A.L.R. 304 and 161 A.L.R. 1428; Niagara Fire Ins. Co. v. Bishop, 154 Ill. 9, 39 N. E. 1102; McKenna Process Co. of Illinois v. Blatchford Corp., 304 Ill. App. 101, 25 N.E.2d 916, in which the court cites with approval Crilly v. Phillip Rinn Co., 135 Ill. App. 198. It has been held that the bringing of a suit is a revocation of the agreement. McKenna Process Co. of Illinois v. Blatchford Corp., supra; Paulsen v. Manske, 24 Ill. App. 95. If the bringing of a suit by the plaintiff is a revocation of the agreement, then the joinder in the suit by filing a defense and delaying any action on the arbitration for a period of two years is a waiver on the part of the defendant if the provision was construed a condition precedent to resort to the courts. Independent School Dist. No. 35, St. Louis County, v. A. Hedenberg & Co., 214 Minn. 82, 7 N.W.2d 511; Radiator Specialty Co. v. Cannon Mills, 97 F.2d 318; Zimmerman v. Cohen, 236 N. Y. 15, 139 N. E. 764; American Locomotive Co. v. Gyro Process Co., 185 F.2d 316. The agreement to arbitrate was mutual and it was as much the duty of the defendant to promptly insist on a submission to arbitration as it was of the plaintiff.

Defendant cites Pacaud v. Waite, 218 Ill. 138, 75 N. E. 779, to support its contention that in the instant case the plaintiff must have exercised the remedies provided in the bylaws of the American Federation of Musicians. In that case a suit was brought by a member of the Board of Trade of Chicago against another member of the same board, together with the president of the board. The rules of the Board of Trade provided that in case a dispute arose concerning to whom a margin deposit should be paid after the contracts were closed, the dispute must be submitted to a committee of the board for determination. The plaintiff did not make any submission to the committee and brought the suit. The court held that the suit could not be maintained. However, in its opinion the court points out that the Board of Trade of the City of Chicago is a voluntary association incorporated by the legislature, which board has the power by its legislative charter to make such rules, regulations and bylaws for the management of its business and regulate the mode in which it shall be transacted as the board thinks proper. By the same charter they were given the same power to constitute committees of arbitration and appeal to be governed by the rules and regulations of the board. There are many cases in Illinois involving the Chicago Board of Trade and the effect of its bylaws upon the rights of its members to seek redress in the courts. These cases are sui generis. 13 I.L.P., Corporations, sec. 6. The rules adduced in the Board of Trade cases are not applicable here.

The plaintiff also cites Payne v. Pullman Co., 13 Ill.App.2d 105, 141 N.E.2d 83, which was a suit brought by an employee against the defendant employer for damages for alleged wrongful termination of his term of employment. He had not exhausted the remedies provided for in the collective bargaining agreement

361

of the union and in the Railway Labor Act. The plaintiff had submitted to the first step therein set out. He had a hearing before the district representative of the carrier but did not take the further appeals provided for. The court in its opinion states that the doctrine of exhaustion of remedies has never been passed on by the Illinois Supreme Court in an employer-employee dispute, though it has been applied and upheld in cases involving members of labor unions seeking relief against penalties or expulsion from the union. The court holds that under the decisions in the Supreme Court of the United States and in other states in cases of discharge by a common carrier the employee cannot bring a suit in the Illinois state courts unless he has exhausted the remedies available to him under the collective bargaining agreement and the Railway Labor Act. This case deals with the right of discharge of an employee. It does not involve a question of contract such as is presented in the instant case. In that case the court did not decide the effect of a waiver since the defendant at the earliest possible moment attacked the lawsuit brought by the plaintiff and the plaintiff had in the first instance submitted the controversy as provided in the Act and agreement. In that case the court cites People v. Women's Catholic Order of Foresters, 162 Ill. 78, 44 N. E. 401. The latter case dealt with the expulsion of a member under the bylaws of the society, and the court there held that where the bylaws of a society require a member to first take an appeal within the society he cannot sue in court until he has exhausted his remedies, and cites cases in support thereof. The court, however, says at pages 83–84:

> ". . . there is a clear distinction between the obligation to appeal from the lower to the higher tribunals of the society itself resting upon one

who presents a question of discipline, and such obligation so far as it concerns one who asserts a claim to money due upon a contract. Where the controversy is concerning the discipline or policy or doctrine of the order or fraternity, the member must resort to the method of procedure prescribed by the association including the remedy by appeal, before invoking the power of the courts. But it is otherwise, where a member claims money due from the society on its contract, or where the beneficiary of a deceased member claims money due from the society on its contract of insurance; in such case, the right to resort to the courts to coerce payment will not be abridged by the right of appeal from a lower to a higher tribunal of the society as conferred by its laws and rules. 'Courts of justice are freely open to those who seek money due them upon a contract.' (Niblack on Ben. Soc. and Acc. Ins.—2d ed.—sec. 313; 2 Bacon on Ben. Soc. and Life Ins., sec. 450; Zeliff v. Knights of Pythias, supra [53 N.J.Law 536]; Bauer v. Samson Lodge No. 32 K. of P., 102 Ind. 262, 1 N. E. 571). As was said in Zeliff v. Knights of Pythias, supra: 'In determining whether courts will take jurisdiction, a distinction must be observed between cases in which the association subjects its members to discipline for immoral conduct or for violation of the rules of the order, and those instances in which the member appeals to the court to secure property rights or to enforce money demands.' "

The cases where the requirement of exhaustion of remedies is enforced are usually cases dealing with the internal discipline of the organization itself; they do not apply to a situation such as exists in the instant case.

The order of the Superior Court appealed from is reversed, and the cause remanded with directions to reinstate the defendant's answer and for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.