Albert Levy and Ethel Levy, Plaintiffs-Appellees, v. American Automobile Insurance Co., a Corporation, Defendant-Appellant.

**Gen. No. 48,143.**

First District, Second Division.

April 18, 1961.

Rehearing denied and opinion modified May 9, 1961.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (A. R. Peterson and John W. Gilligan, of counsel) for appellant.

Harry S. & Fred S. Posner, of Chicago (Fred S. Posner, of counsel) for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

The plaintiffs filed an action against the defendant insurance company to recover under their "Uninsured Motorist Insurance" endorsement for damages sustained by them as a result of an accident with an allegedly uninsured motorist. They obtained a judgment for $10,500 from the defendant insurance company and this appeal followed.

The principal questions on this appeal are: (1) whether the plaintiffs' action in reducing the claim to judgment against the allegedly uninsured motorist without first obtaining the written consent of the insurance company, as required by the endorsement to the policy, prevents their recovery on the policy, and (2) whether competent evidence was adduced at the trial to prove the uninsured status of the person allegedly liable for the injury and the amount of damages for bodily injury.

The "Family Protection Coverage", (commonly known as the Uninsured Motorist Insurance), endorse-

159

ment to the insurance contract provides that the company agrees "to pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of . . . 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company, or, if they fail to agree (and the insured so demands), by arbitration."

An uninsured automobile is defined in the endorsement as "an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile. . ." .

Under "Conditions", the insured is required "as soon as practicable" to give to the Company a written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment and other details entering into the determination of the amount payable hereunder. He is also required to submit to physical examinations by physicians selected by the Company when and as often as the Company may reasonably require and to submit to examinations under oath by any person named by the Company, and subscribe the same, as often as may be reasonably required.

It is further provided under "Conditions":

"3. Notice of Legal Action. If, before the Company makes payment of loss hereunder, the in-

sured or his legal representative shall institute any legal action for bodily injury against any person or organization legally responsible for the use of an automobile in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the Company by the insured or his legal representative."

"6. Arbitration. If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of such person, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement."

". . .

"9. Action Against Company. No action shall lie against the Company unless, as a condition precedent, thereto, the insured or his legal representative has fully complied with all the terms of this endorsement."

It is admitted that the policy was in full force and effect on the date of the accident, December 1, 1957. The driver of the allegedly uninsured automobile was identified in the Police Report as Howard Perkins and

the owner was identified as Walter A. Smith. Plaintiffs' attorney sent letters to these individuals requesting that they inform their insurance company of the accident. Suit was filed against Perkins and Smith on December 18, 1957. On February 15th and 16th, the plaintiffs' attorney contacted Perkins and Smith, and, according to his testimony, they told him that they were not insured. The following day, plaintiffs' attorney contacted the defendant insurance company in regard to the accident and the possible coverage under his clients' uninsured motorist insurance. Mr. Koppes, an adjuster from the defendant company, contacted the plaintiffs thereafter, and several days later, the plaintiffs sent the defendant a copy of the summons and the complaint in the case of Levys v. Smith and Perkins. The parties submitted to a physical examination as requested by the defendant, and later sent their "specials" to the company. After a series of fruitless negotiations with the company, the talks broke down and Mr. Koppes, defendant's adjuster, said that he wanted the matter submitted to arbitration. Plaintiffs' attorney refused, and thereupon Mr. Koppes said that they needed the company's written consent before going to judgment against Perkins and that they wouldn't get the written consent. On December 15, 1958, the plaintiffs obtained a default judgment against Perkins and sent a notice of this to the company. The defendant now says that the plaintiffs are not covered by the endorsement because they obtained a judgment against Perkins without first obtaining the Company's written consent.

The defendant's basic premise is that proof of a right to recover and the amount recoverable may be made in an action on the contract directly against the insurance company and that no other action is necessary or relevant. We are not informed as to how this

162

could be, for the plaintiffs have no cause of action against the company on the policy endorsement until it is first determined that they are legally entitled to recover damages from the owner or operator of an uninsured automobile. Indeed, this argument is directly contrary to the express provisions of the endorsement, which provide that "the determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company, or, if they fail to agree (and the insured so demands), by arbitration."

 The parties failed to agree and the plaintiffs' attorney declined to submit the dispute to arbitration. The only other recourse available was to obtain a judgment against the third party, however, the insurance endorsement required the written consent of the insurer as a condition precedent to the ascertainment of its liability by this method of enforcement. The undisputed evidence is that the defendant refused to grant its written consent unless the plaintiffs submitted the dispute to arbitration. The defendant had no right to demand arbitration for the express terms of the endorsement provide that only the insured had the option to select arbitration. To condone this improper use of the "written consent" provision would in effect force the insured to submit the entire future controversy to arbitration, and it is well established that such provisions are not valid in this state. Niagara Fire Insurance Company v. Bishop, 154 Ill. 9, 39 N. E. 1102; White Eagle Laundry Co. v. Slawek, 296 Ill. 240, 129 N. E. 753; Cocalis v. Nazlides, 308 Ill. 152, 139 N. E. 95; Hill v. Mercury Record Co., 26 Ill.App.2d 350, 168 N.E.2d 461.

The defendant's position is comparable to a situation where one prevents the performance of a condition of his own promissory duty. The rule there applied is that "one who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby elminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised." Corbin on Contracts, Vol. 3A, section 767, p. 540.

In the case at bar, the condition of the company's promise to pay is the ascertainment of the legal liability of the third party. The company can prevent this determination by the simple device of refusing to grant the insured its written consent to prosecute the action to judgment. There was an implied promise on the part of the Insurance Company that it would not unreasonably or arbitrarily withhold its written consent. The company gave no reason for its refusal to allow the plaintiffs to obtain a judgment against the uninsured motorist. It appeared that the company wanted the matter arbitrated and that if the insured refused to submit to arbitration, it would prevent a determination of its liability on the policy. Under these circumstances, the action of the company in arbitrarily withholding its written consent constitutes a violation of the implied provisions of the policy and consequently the exclusion clause is not a bar to this action.

These views are consistent with the opinion of the Supreme Court of Oklahoma in Boughton v. Farmers Insurance Exchange, 354 P.2d 1085, the only other case where this type of insurance endorsement was judicially interpreted. The court there held that an unenforceable compulsory arbitration provision did not invalidate the contract, since the "primary and essential part

of the contract was insurance coverage, not the procedure for determining liability." The court went on to say that "if the insurer imposed provisions in the policy which were unenforceable and void it cannot deny liability under the insuring agreement because of the unenforceable and void provisions. Such provisions cannot invalidate or hold for naught a liability which the insurer agreed by contract to assume. A contrary rule would, in effect, be giving legal force to provisions which are unenforceable and void." 354 P.2d 1085, 1090.

We will next proceed to the question as to whether competent evidence was adduced to support the finding that an uninsured motorist was involved in the accident. The proof of the non-insurance of the motorist was presented by the attorney for the plaintiffs. He testified that after he failed to get a response from the letters requesting that Perkins and Smith notify their insurance company, he made a personal investigation of the matter, and that both individuals told him that they were not insured. Their remarks were introduced into evidence as declarations against financial interest, an exception to the hearsay rule. The defendant objected and the testimony was admitted over the objection.

■■■■ There was no showing that Perkins was unavailable. The plaintiffs state that the mere recent weight of authority allows the use of the declaration, without a showing of excusable unavailability. However, the cases cited in support of their contention do not substantiate this position. The rule in Illinois is that a showing of unavailability of the declarant is a necessary element for the introduction of the declaration against financial interest, particularly where the declaration is oral. 18 I. L. P., Evidence, section 114, p. 253–4. German Insurance Co. v. Bartlett, 188 Ill. 165, 58 N. E. 1075. Equally without merit is the argu-

ment that there was an assent by silence to the issue of the non-insurance of the third party. There is nothing in the evidence to indicate that the defendant had any information concerning this aspect of the plaintiff's case. We do know that the insurance company contested its liability, however, it does not appear that any reasons were given for this position. We cannot assume an assent by silence merely because the parties were involved in extended negotiations over the claim. The fact that no insurance company for the third party contacted the plaintiffs also fails to supply the necessary element of proof of the fact of non-insurance. The argument that there was a judicial admission of this claimed fact in the defendant's memorandum brief filed in support of the defendant's motion to dismiss is also without merit, for this does not constitute proof at the trial, and, at any rate, it was superseded by the defendant's answer.

 Finally, we are of the opinion that the finding with respect to damages is not supported by competent evidence. This finding was based entirely upon the proof that default judgments in the amount of $10,500 were entered in the Superior Court against the third party. No evidence as to damages was received at the trial. The record clearly shows that the plaintiffs' action against Perkins, the allegedly uninsured motorist, was not limited to bodily injury, but included a demand for reimbursement for repairs to and loss of the use of their automobile. Yet the judgments which include this amount were accepted as proof of the amounts due under the endorsement which provides for no such coverage. The defendant did not undertake to pay any judgment rendered against the third party, but only to pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of "bodily injury".

The plaintiffs have failed to prove by competent evidence the fact of non-insurance of the third party and the amount of damages recoverable under the bodily injury provision. For these errors in the trial, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Judgment reversed, and cause remanded.

FRIEND, J., concurs.

BURKE, P. J., dissenting:

In my opinion the judgments should be reversed and the cause remanded with directions to enter judgment for the defendant. The Family Protection Coverage endorsement does not apply. The provisions are clear and unambiguous. The endorsement to the agreement states clearly that its provisions shall not apply whenever an insured takes judgment without the written consent of the insurer. The plaintiffs, after due deliberation, took judgment without securing the written consent of the insurer. Where the provisions of a contract are clear and explicit, as in this instance, it is the duty of the court to enforce them. O'Daniell v. Missouri Ins. Co., 24 Ill.App.2d 10, 164 N.E.2d 78. Since plaintiffs claim no right to their judgments under any other provision of the contract and since the endorsement under which they claim does not apply, the judgments should be reversed.

The contract is not contrary to public policy. It makes no attempt to relieve the third party of any responsibility for his acts. Plaintiffs' argument that the contract is without consideration and without mutuality cannot stand. If these arguments were valid, there would be no contract at all and no basis for any action by plaintiffs. The law does not require con-

sideration and mutuality as to each provision. One provision of a contract is consideration for another. The obligations imposed upon one party by one provision give mutuality to the separate obligation imposed upon the other party by another provision. The law of consideration and the law of mutuality apply to contracts and not to provisions.