# IN THE SUPREME COURT OF IOWA

No. 5 / 04-0864

Filed May 12, 2006

**JAMES B. WILSON, as Administrator of the Estate of LILY M. WILSON, Deceased**,

Appellant,

vs.

**FARM BUREAU MUTUAL INSURANCE COMPANY**,

Appellee.

---

Appeal from the Iowa District Court for Muscatine County, David H. Sivright, Jr., Judge.

Insured appeals from a district court ruling denying its motion for summary judgment on its contract claim for underinsurance motorist benefits and granting the insurer's motion for summary judgment on the insured's bad faith claim. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Sara Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Brian C. Ivers of McDonald, Woodward & Ivers, P.C., Davenport, for appellee.

**LAVORATO, Chief Justice.**

In an underlying tort suit, an insured obtained a jury verdict against an underinsured motorist. Following the verdict, the district court reduced it by the percentage of fault the jury attributed to the insured and entered judgment for the reduced amount. Following entry of the judgment, the insured filed a motion to correct the judgment by increasing it to reflect the jury's determination regarding loss of consortium claims. The court granted the motion and entered an amended judgment.

The insured sued its insurer on a contract claim to recover underinsured motorist benefits in the amount of the amended judgment entry less the underinsured motorist's liability limits pursuant to the insured's underinsured motorist (UIM) coverage. The insured also joined a claim for bad faith against the insurer for its failure to pay the insured's demand for the underinsured benefits. The court granted the insured's motion for summary judgment on its contract claim in part and denied it in part. In granting the motion, the court ruled that a consent-to-be-bound provision under the insured's UIM coverage was contrary to public policy and therefore unenforceable. In denying the motion, the court allowed the insurer to relitigate the issue of damages in the underlying tort suit. The district court granted the insurer's motion for summary judgment as to the insured's bad faith claim.

The insured filed an application for interlocutory appeal, which we granted.

We conclude the insurer is bound by the original judgment entry but not bound by the amended judgment entry. We also conclude that as a matter of law the insurer was not in bad faith in denying the insured's demand. Finally, we conclude the consent-to-be-bound provision is valid

and enforceable.  We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I.  Background Facts and Proceedings.

On November 30, 1999, Lily M. Wilson walked across a road to retrieve her mail from a mailbox that was located across the road from her home.  While walking back to her home, Wilson was struck by a vehicle driven by Margie Carter.  Later that day, Wilson died of her injuries suffered in the incident.

Wilson had automobile insurance with Farm Bureau Mutual Insurance Company, which included medical pay coverage of $5000 and UIM coverage of $100,000.  Carter had automobile insurance through Hartford Insurance Company with liability limits of $100,000 (each person) and $300,000 (each occurrence).

Wilson's policy provided in part the following:

**REPORTING A CLAIM—INSURED'S DUTIES**

. . . .

**4.   Other Duties Under . . . Under-Insured Motor Vehicle . . . Coverage[]**
The **person** making claim also shall:

. . . .

d.  under the . . . under-insured motor vehicle coverage[], send **us** at once a copy of all suit papers when the party liable for the accident is sued for these damages.

. . . .

**Coverage I—Under-Insured Motor Vehicle**

. . . .

**We** will pay damages for **bodily injury** an **insured** is legally entitled to recover from the owner or operator of an **under-insured motor vehicle**.  The **bodily injury** must be

caused by an accident and arise out of the ownership, maintenance or use of an **under-insured motor vehicle**.

. . . .

THERE IS NO COVERAGE UNDER COVERAGES H OR I:
1. FOR ANY **INSURED** WHO, WITHOUT **OUR** WRITTEN CONSENT, SETTLES WITH ANY **PERSON** OR ORGANIZATION WHO MAY BE LIABLE FOR THE **BODILY INJURY**.

. . . .

**Written Consent Requirement—Coverage H and I**
**We** are not bound by any judgment against any **person** or organization obtained without **our** written consent.

[Hereinafter referred to as the consent-to-be-bound provision.]

**A. Suit I.** In February 2000 Wilson's estate sued Carter for damages to the estate and for loss of consortium suffered by the decedent's surviving children. On July 18 the estate's attorney wrote Farm Bureau notifying it of the estate's intention to make a claim for UIM benefits for the estate under Wilson's policy. Enclosed with the letter was a copy of the amended and substituted petition filed on behalf of the estate against Carter and Carter's answer to the petition. The letter further notified Farm Bureau that the estate's attorney had learned through discovery that Carter's liability limits were $100,000/$300,000, which the attorney believed were insufficient to cover the estate's damages.

On February 6, 2002, a jury returned a verdict in the estate's favor and against Carter as follows: $7906.81 for interest on reasonable burial expenses, $6888.50 for the reasonable value of medical expenses, and $145,000 for loss of consortium suffered by the decedent's surviving children for a total of $159,795.31.

During the trial, the district court submitted an instruction, which neither party objected to, informing the jury that "[t]he fault of the person whose injury or death provides the basis for the consortium claim of Lily

Wilson's children does not bar or reduce the consortium recovery." The jury verdict form relating to the consortium claims stated in part: "State the amount of damages sustained by the children due to loss of parental services or parental consortium proximately caused by defendant's fault. Do not take into consideration any reduction of damages due to Lily Wilson's fault." Neither party objected to this verdict form.

The jury found Wilson twenty percent at fault and Carter eighty percent at fault. After the jury returned its verdict, the district court reduced the total jury award, including the loss of consortium award, by twenty percent. The court reduced the loss of consortium award by twenty percent because it believed that it had instructed the jury incorrectly that the decedent's fault does not reduce the consortium claims. *See* Iowa Code § 668.3(1)(*b*) (2005) (any damages for consortium will be reduced by the percentage of fault attributed to the person who provides the basis for the consortium damages); *id.* § 668.3(4) (the court shall determine the amount of damages payable to each party in accordance with the findings of the court or jury). This reduced the verdict from $159,795.31 to $127,836.25.

In response to the court's action, the estate filed a motion on February 20 to correct judgment entry. The estate alleged that the instruction, even though an incorrect statement of the law, became the law of the case. For that reason, the estate further alleged, the judgment entry should be corrected to reflect that the consortium damages are not reduced by the decedent's fault. That same day, the district court entered an amended judgment entry for the medical expenses and interest on burial expenses reduced by the percentage of fault attributed to the decedent and for the *full* loss of consortium damages as the jury had awarded. The total amended judgment as entered was $156,836.25, together with interest as provided by law.

In the meantime, on February 11, Carter's attorney offered the estate Carter's policy limits of $100,000, which the estate conditionally accepted on February 13. The condition was that Carter was to provide proof of inability to pay the excess judgment. Carter subsequently provided such proof, and the estate entered a satisfaction of the judgment in return for payment of $100,000 on March 14.

On March 8 the estate made a demand on Farm Bureau for $56,836.25, which represented the balance of the amended judgment entry minus Carter's $100,000 policy limits. In the demand, the estate agreed to waive pre- and postjudgment interest. Farm Bureau rejected the demand and offered $22,000 in settlement, which the estate rejected.

**B. Suit II.** On May 9, 2002, the estate sued Farm Bureau for breach of contract for the underinsured damages and for bad faith. The estate later filed an amended and substituted petition. Farm Bureau's amended answer raised several affirmative defenses, the following of which are pertinent to this appeal: (1) the judgment was not obtained with Farm Bureau's written consent, (2) the judgment has no res judicata effect because Farm Bureau was not a party to the underlying tort suit, and (3) the judgment is not an amount the insured was "legally entitled to recover," making the amount fairly debatable.

On January 23, 2004, the estate filed a motion for summary judgment. The estate sought summary judgment on its breach of contract claim but not on its bad faith claim. As to the latter, the estate maintained genuine issues of material fact existed on that issue.

Farm Bureau filed a resistance to the estate's summary judgment motion and a counter motion for summary judgment. Farm Bureau contended that there were genuine issues of material fact as to the estate's

breach of contract claim and no genuine issue of material fact as to the estate's bad faith claim.

The district court granted the estate's motion for summary judgment in part and denied it in part. In granting the motion, the court ruled that the consent-to-be-bound provision was contrary to public policy and therefore unenforceable. In denying the motion, the court concluded the amended judgment entry was correct. However, the court also concluded that "Farm Bureau would be unfairly prejudiced if bound by a judgment resulting from erroneous jury instructions, given without objection by Carter's attorney, which became the law of the case." Consequently, the court allowed Farm Bureau to relitigate the issue of damages in the underlying tort suit. Finally, the court sustained Farm Bureau's motion for summary judgment on the estate's bad faith claim.

The estate filed an application for interlocutory appeal and an application to stay district court proceedings. We granted both applications.

## II. Issues.

In this appeal, the estate's challenge to the district court's ruling on its motion for summary judgment on its contract claim raises two issues. First, is Farm Bureau bound by the amended judgment entry in suit I? Second, if Farm Bureau is not bound by the amended judgment entry, is it bound by the original judgment entry in suit I? The estate also challenges the district court's ruling granting Farm Bureau's motion for summary judgment on the estate's bad faith claim.

## III. Scope of Review.

We review a ruling on a motion for summary judgment for correction of errors at law. *Dickens v. Associated Anesthesiologists, P.C.*, 709 N.W.2d 122, 125 (Iowa 2006). Summary judgment must be granted

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3). "Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts." *Farmers Nat'l Bank of Winfield v. Winfield Implement Co.*, 702 N.W.2d 465, 466 (Iowa 2005). We therefore concern ourselves with two questions: whether there is a genuine issue of material fact and whether the district court correctly applied the law. *Ratcliff v. Graether*, 697 N.W.2d 119, 123 (Iowa 2005).

**IV. Is Farm Bureau Bound By the Amended Judgment Entry in Suit I?**

In denying the estate's motion for summary judgment, the district court concluded that

Farm Bureau would be unfairly prejudiced if bound by a judgment resulting from erroneous jury instructions, given without objection by Carter's attorney [in suit I], which became the law of the case. Under the unusual facts in this record, Farm Bureau should be afforded an opportunity to relitigate the issue of underinsured damages due the plaintiff.

This ruling raises the question whether Farm Bureau is bound by the amended judgment entry in suit I. On this issue, we must first look to the language of the UIM provision in the decedent's policy with Farm Bureau. *See Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 584 (Iowa 2004).

In *American Family Mutual Insurance Co. v. Petersen*, we were concerned with the binding effect of a default judgment in the context of an uninsured motorist (UM) provision providing that the insurer would pay damages for bodily injury that the insured is legally entitled to recover from the uninsured motorist. *Id.* Although here we are dealing with a UIM provision, the following language in *Petersen* applies with equal force to such a provision:

In considering the binding effect of the judgment, we are mindful that the issue is presented only in the context of an action to enforce the UM provisions of an insurance policy requiring the insurer to pay the insured damages which the insured "is legally entitled to recover" from the uninsured motorist. *Consequently, the binding effect of the tort judgment at issue in this case is not necessarily governed by the doctrine of res judicata and collateral estoppel; the language of the contract between the parties is the primary source of the parties' respective rights.* If an insured establishes legal entitlement to damages against an uninsured motorist, then the insurer is contractually obligated to pay the insured the damages as specified in the insurance policy. An insured generally satisfies the "legally entitled to recover" condition of UM coverage when a valid judgment has been entered against the uninsured motorist.

*Id.* (emphasis added) (citations omitted). Thus, assuming the other terms and conditions of the policy are satisfied, once the insured obtains a valid judgment against the underinsured motorist, the insurer is obligated pursuant to the terms of the policy to pay the amount of the judgment that exceeds the liability coverage of the underinsured motorist up to the limit of the UIM coverage.

An insured establishes the legally entitled to recover requirement by proving the underinsured motorist was liable and the amount of damages. *Id.* at 584 n.3. The insured is allowed to meet this burden either in an action against the underinsured motorist or in an action against the insurer. *Id.*; *Handley v. Farm Bureau Mut. Ins. Co.*, 467 N.W.2d 247, 249 (Iowa 1991).

Although securing a valid judgment against an underinsured motorist can establish the insured's right to recover UIM benefits, the UIM coverage provisions here impose other conditions that could require relitigation of the liability and damages issues. *See Petersen*, 679 N.W.2d at 584-85. In *Petersen*, we held the default judgment against the uninsured motorist was not binding on the insurer because the insured had not given adequate notice to the insurer of its suit against the uninsured motorist as required

by the policy. *Id.* at 585. Because the notice issue in *Petersen* was dispositive, we did not consider the effect of a policy provision that provided that the insurer was not bound by any judgment without its " 'consent' to the suit." *Id.*

In its motion for summary judgment on the contract claim, the estate contended in the district court as it does on appeal that (1) the amended judgment entry in suit I conclusively established what the estate is legally entitled to recover from Farm Bureau and (2) issue preclusion is not an available defense to avoid the binding effect of the amended judgment entry. In response, Farm Bureau contends, as it did in the district court, that (1) the amended judgment entry in suit I did not conclusively establish what the estate is legally entitled to recover under the policy and (2) Farm Bureau could only be bound by the principles of issue preclusion.

As to the amended judgment entry, Farm Bureau raised a number of defenses to the estate's motion for summary judgment on its contract claim, all of which Farm Bureau raises here. We address only one of those defenses because we think it is dispositive of the issue. The defense is based on the written consent-to-be-bound provision pertaining to UIM coverage. As mentioned, this provision provides as follows: "**We** are not bound by any judgment against any **person** or organization obtained without **our** written consent."

This requirement is commonly referred to as a "consent-to-sue" provision, but it is more accurately described as a "consent-to-be-bound" provision. *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 491 n.3 (Colo. 1998). The consent-to-be-bound provision has been widely litigated. Some courts have declared such provisions to be void or invalid and hold that tort judgments against the underinsured motorists are generally binding on the insurer. Reasons given by such courts for this holding

include the following: (1) "[I]t is generally against public policy for the insurer to restrict the insured's right to trial by jury of the action against a negligent motorist," *Keel v. MFA Ins. Co.*, 553 P.2d 153, 157 (Okla. 1976); (2) Such provisions "are contrary to public policy because they present arbitrary barriers to the recovery of statutorily mandated benefits," *Kwong v. Depositors Ins. Co.*, 627 N.W.2d 52, 56 (Minn. 2001); (3) An insurance company could unreasonably and arbitrarily withhold consent, *Kremer v. Am. Family Mut. Ins. Co.*, 501 N.W.2d 765, 768-69 (S.D. 1993); and (4) Declaring consent-to-be-bound provisions void or invalid promotes the policy of avoiding a multiplicity of lawsuits, *Nationwide Mut. Ins. Co. v. Webb*, 436 A.2d 465, 473 (Md. 1981). The district court, relying on *Kwong*, found the consent-to-be-bound provision in the Farm Bureau policy contrary to public policy and unenforceable.

Recognizing that the insurer has some legitimate concerns about protecting its interests, the court in *Kwong* concluded that "[t]hose interests can be adequately safeguarded by requiring that the insurer 'receive notice of, and an opportunity to [intervene and] participate in, the insured's personal injury claim.' " *Kwong*, 627 N.W.2d at 57 (citation omitted). Several courts have followed the same approach. *See, e.g., Webb,* 436 A.2d at 475-78; *Heisner v. Protective Fire & Cas. Co.,* 169 N.W.2d 606, 611-12 (Neb. 1969); *Keel,* 553 P.2d at 157-58; *Kremer,* 501 N.W.2d at 769.

Following this approach here would be problematic because of our decision in *Handley v. Farm Bureau Mutual Insurance Co.*, 467 N.W.2d 247 (Iowa 1991). We held in that case that it was an abuse of discretion not to sever the tort claim against the underinsured motorist from the contract claim against the insurer for UIM benefits. *Handley,* 467 N.W.2d at 250. We reasoned that evidence of insurance would cause the jury to return a larger verdict against the underinsured motorist than it would have if it

were unaware that insurance existed. *Id.* We therefore concluded that potential prejudice could be avoided by severing the claims against the insurer from the claim against the underinsured motorist. *Id.* Facing a similar problem, the court in *Keel* simply overruled its prior holding and permitted the joinder of an insurer as a party defendant in an action against an uninsured motorist. *See Keel*, 553 P.2d at 158.

Other courts have upheld the validity of consent-to-be-bound provisions. *See, e.g., Gulf Am. Fire & Cas. Co. v. Gowan*, 218 So. 2d 688, 693-94 (Ala. 1969); *MFA Mut. Ins. Co. v. Bradshaw*, 431 S.W.2d 252, 256 (Ark. 1968); *Moorcroft v. First Ins. Co. of Haw.*, 720 P.2d 178, 179-80 (Haw. 1986); *Baron v. Coronet Ins. Co.*, 361 N.E.2d 799, 802 (Ill. App. Ct. 1977); *Allstate Ins. Co. v. Pietrosh,* 454 P.2d 106, 110-11 (Nev. 1969); *Poray v. Royal Globe Ins. Co.*, 217 A.2d 916, 920-21 (N.J. Super. Ct. Law Div. 1966); *Criterion Ins. Co. v. Brown,* 469 S.W.2d 484, 485 (Tex. Civ. App. 1971). However, in upholding consent-to-be-bound provisions, courts have recognized that such provisions have the potential to hinder an insured's ability to recover damages. 9 Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance* § 124:3, at 124-8 (3d ed. 2005). Therefore, the validity of consent-to-be-bound provisions "is often contingent upon an implied promise on the part of the insurer that it will not arbitrarily or unreasonably withhold or refuse its consent." *Id.*; *see also Levy v. Am. Auto. Ins. Co.*, 175 N.E.2d 607, 611 (Ill. App. Ct. 1961); *Newark Ins. Co. v. Ezell,* 520 S.W.2d 318, 321 (Ky. Ct. App. 1975).

As one court has recognized, one of the purposes of requiring the insurance company's written consent to be bound "is to allow the insurance company to protect itself from a default judgment taken against the uninsured/underinsured motorist or an insubstantial defense by the uninsured/underinsured motorist." *In re Koehn,* 86 S.W.3d 363, 368 (Tex.

App. 2002); *see also Pietrosh,* 454 P.2d at 111 (Enforcement of the consent-to-bound provision "may be appropriate in a case where the insured secures a default judgment against the uninsured motorist, since an adversary determination of liability and damages is absent."). Another reason includes guarding against collusion between the insured and the underinsured motorist. *See Ezell,* 520 S.W.2d at 321.

We hold that a consent-to-be-bound provision, like the one in this case, is valid and enforceable provided the insurer does not withhold or refuse its consent without a reasonable basis to do so. There are several reasons for our holding. The provision does not require a forfeiture of benefits if consent is not obtained, a reason some states have given for holding such provisions valid. *See, e.g., Moorcroft,* 720 P.2d at 180. Additionally, we see nothing in our statutory provisions regarding UIM coverage that requires such coverage be unqualified. *See generally* Iowa Code ch. 516A; *see also Moorcroft,* 720 P.2d at 180. Moreover, the approach we take eliminates the previously discussed joinder problem that might arise were we to declare the consent-to-be-bound provision void or invalid. *See, e.g., Handley*, 467 N.W.2d at 250; *Keel*, 553 P.2d at 158. Finally, our holding is consistent with how we have treated a similar provision—the consent-to-settlement clause—in the context of a UIM case. *See Bellville v. Farm Bureau Mut. Ins. Co.,* 702 N.W.2d 468 (Iowa 2005). We held in *Bellville v. Farm Bureau Mutual Insurance Co.* that "the consent-to-settlement clause not only imposes an express duty on the insured to obtain the insurer's consent to settlement but also imposes an implied reciprocal duty on the insurer to consent unless it has a reasonable basis for refusing to do so." *Id.* at 484.

Our holding that a consent-to-be-bound provision is valid and enforceable imposes on the insured and the insurer certain duties. Before

the insured can satisfy the legally entitled to recover condition under the UIM coverage, the insured must comply with all of the other conditions of such coverage. For example, here, the UIM policy provision requires the insured to provide the insurer a copy of all suit papers when the insured sues the underinsured motorist. In addition to complying with this condition, the insured must obtain a valid judgment against the underinsured motorist. Implicit in this last requirement is that the suit must be defended. Default judgments, insubstantial defenses, and collusion between the insured and the underinsured motorist will preclude the insured from satisfying the legally entitled to recover condition. In short, the insurer will not be bound by a judgment obtained through any of these means. Once the insured satisfies the legally entitled to recover condition of the UIM coverage, the insurer has an implied reciprocal duty to refrain from withholding or refusing its consent to be bound by the judgment without a reasonable basis to do so.

These express duties on the part of the insured protect the insurer against default judgment, insubstantial defenses, and collusion between the insured and the underinsured motorist. The insurer's implied reciprocal duty prevents arbitrary barriers to the recovery of statutorily mandated benefits and promotes the avoidance of multiplicity of lawsuits.

With these principles in mind, we turn to the record in this case regarding the amended judgment entry in suit I. Farm Bureau contended in the district court, as it does here, that the amended judgment entry was obtained without Farm Bureau's written consent in violation of its consent-to-be-bound provision. For that reason, Farm Bureau argues, it is not bound by the amended judgment entry.

It is undisputed that the estate did not obtain Farm Bureau's written consent to the amended judgment entry in suit I. In addition, the record is

uncontroverted, as Farm Bureau argues, that at the time the estate filed its motion to correct judgment entry, suit I was undefended, a fact unknown to Farm Bureau at the time. Thus, there was an insubstantial defense to the motion. *See Koehn*, 86 S.W.2d at 368. Carter's attorney filed an uncontroverted affidavit that confirms these facts. He stated:

> 1. I am an attorney licensed to practice law in the state of Iowa.
>
> 2. I represented defendant Margie Carter in [suit I] that went to trial in February 2002.
>
> 3. I recently learned that [the estate's lawyer] made two telephone calls to [the judge who tried suit I] following the trial of [suit I]. I had no knowledge of these telephone calls [before they were made].
>
> 4. Following the trial, [the estate's lawyer] filed a motion to correct judgment entry [in suit I]. I filed no resistance to that motion because [the estate's lawyer] already accepted my client's offer to settle the case.
>
> 5. I never made any analysis, one way or the other, of whether the motion to correct judgment entry should be granted.

The circumstances in which the amended judgment entry was granted underscore the very reason for the consent-to-be-bound provision. But our inquiry does not end here. With regard to consent-to-settlement provisions, we said in *Bellville*:

> Our court has held that [consent-to-settlement] clauses are permissible under Iowa law as a means to protect the insurer's subrogation rights against the responsible party. In recognition of this limited purpose, we have held that an insured's failure to obtain the insurer's consent to settlement will preclude payment of UIM benefits only if the insurer "proves that, absent such a breach, it could have collected from the tort-feasor." Furthermore, the insured's entitlement to UIM benefits will be reduced only by the amount of the subrogation recovery lost by the insurance company. We have placed the burden of proving prejudice on the insurer: "The insurer must establish not only that the claim has been released but also that it was collectible and establish within a reasonable approximation the dollar amount that might be collected."

*Bellville*, 702 N.W.2d at 483 (citations omitted).

Similarly here, as we now hold, consent-to-be-bound provisions are permissible to protect the insurer's interests, albeit those interests are different from subrogation rights. We are convinced the insurer, as with consent-to-settlement provisions, should bear the burden of proving prejudice when an insured has not secured the insurer's consent to be bound. Farm Bureau has the burden to prove that the amended judgment entry has prejudiced its rights; otherwise it is bound by it. For reasons that follow, we think Farm Bureau has met its burden.

If the district court was correct in amending the judgment, Farm Bureau has suffered no prejudice; otherwise it has. The estate relies heavily on our decision in *Sullivan v. Wickwire*, 476 N.W.2d 69 (Iowa 1991) to support the district court's action in entering the amended judgment.

In *Sullivan*, all defendants except one settled before trial. *Sullivan v. Wickwire*, 476 N.W.2d 69, 70 (Iowa 1991). During the trial, the district court submitted a jury instruction without objection that failed to advise the jury that if they assigned fault to a settling defendant, that fault would reduce the damages awarded to the plaintiff. *Id.* at 72. The jury returned a verdict assessing the plaintiff's damages and assigned a percentage of fault to the plaintiff and to all of the defendants except one. *Id.* Despite the incorrect instruction, the district court reduced the verdict by the settling defendant's fault, thereby reducing the plaintiff's recovery. *Id.* The non-settling defendant argued on appeal that the district court was correct in reducing the verdict while the plaintiff argued that the district court was powerless to correct the judgment. *Id.* On this issue, we said:

> There is considerable merit in plaintiff's claim . . . . In Iowa and elsewhere, an instruction submitted to the jury without objection becomes the law of the case and will not be disturbed on appeal. The [defendant] attempts to discredit the rule in the present case by arguing the jurors' sole task was to find damages and allocate percentages of fault, leaving to the

court the job of applying mathematical formulas to achieve the correct judgment. We do not believe, however, that the jury's understanding of the impact of its verdict is irrelevant to its decision-making responsibilities. In keeping with Iowa Code section 668.3(5), our prior decisions make clear that the court must instruct the jury with respect to the effect of answers given to special interrogatories, and the court's failure to do so may constitute reversible error.

*Id.* at 72-73 (citations omitted).

Although the facts in *Sullivan* are similar to the facts here we need not follow the reasoning expressed in the foregoing discussion because it was dicta. This was made apparent in the passage following that discussion: "We need not decide in the present case whether the court's error merits a new trial or merely an amended judgment, because other errors committed by the court demand a new trial." *Sullivan*, 476 N.W.2d at 73. For reasons that follow, we decide not to follow this dicta.

In *Reese v. Werts Corp.*, this court recognized that section 668.3(5) "requires the [district] court to instruct the jury not only on the effect of the claimant's contributory fault but also on the effect of the fault of other parties." 379 N.W.2d 1, 3 (Iowa 1985). In that case, the district court instructed the jury that the percentage of negligence it attributed to the plaintiff (the case was tried in part under comparative negligence) would be used by the court to reduce the amount of damages the jury found the plaintiff had sustained. *Id.* What the court did not tell the jury in that instruction was that a defendant who bears less than fifty percent of the total fault was not jointly and severally liable, as the court was required to do under Iowa Code section 668.3(5). *Id.* at 3-4. The plaintiff objected to the instruction because the instruction did not take into account the joint and several liability rule. *Id.* at 3. The district court overruled the objection. *Id.* The jury found that the plaintiff sustained $100,000 in damages. *Id.* at 2. The jury attributed five percent of the negligence to the

plaintiff, and attributed fifteen percent to the defendant. *Id.* Following the verdict, the plaintiff moved for a judgment against the defendant in the amount of $95,000. *Id.* Instead the court entered judgment in favor of the plaintiff in the amount of $15,000. *Id.* Under the instruction, if it were true, the plaintiff's recovery would have been $95,000 instead of $15,000. *Id.* at 3. This court held that because the district court undertook to instruct the jury on the effect of its determinations it was required to instruct accurately. *Id.* We reversed and remanded for a new trial, concluding that the district court had given the jury misleading advice and had failed to instruct the jury on the effect of its answers to the interrogatories as required by section 668.3(5). *Id.* at 4. Obviously, this court reversed because the verdict was tainted by that error resulting in *prejudice* to the plaintiff.

In *Schwennen v. Abell*, we also noted that section 668.3(5) requires that the jury be made aware of the effect of its fault apportionment on the claimant's right to recovery. 430 N.W.2d 98, 104 (Iowa 1988). In that case we said: "In *Reese*, we found it to be reversible error for the court to fail to instruct on this matter or to give misleading instructions with respect thereto." *Id.* (citation omitted). We then pointed out in *Schwennen* that the instructions given in the case before it were based on the incorrect premise that one of the defendants could be allocated some fault. *Id.* We rejected the plaintiff's suggestion that such fault should be disregarded and the jury's allocation of fault should be reassigned to the remaining defendants by a process of interpolation. *Id.* We noted that the plaintiff's suggestion would "have a substantially different effect on the [remaining defendants] than the jury would have perceived them to have under the trial court's instructions." *Id.* Such a result, we held, required that the apportionment of fault among the remaining defendants had to be tried anew. *Id.* Because

the verdict was tainted by the district court's error resulting in *prejudice* to the remaining defendants, we reversed. *Id.*

Implicit in both *Reese* and *Schwennen* was the fact that the erroneous and misleading instructions tainted the jury verdicts resulting in prejudice to the parties challenging the verdicts. *See Grefe & Sidney v. Watters*, 525 N.W.2d 821, 824 (Iowa 1994) ("If instructions are erroneous, they must be prejudicial before we will order reversal."). Here, the estate did not assail the jury's verdict on the grounds of an erroneous and misleading instruction that prejudiced the consortium claimants. Rather, the estate *accepted* the verdict as the correct measure of damages. Instead of challenging the verdict, the estate is seeking to uphold it on the grounds that the incorrect instruction became the law of the case. Because the consortium claimants were not prejudiced by the instruction and resulting verdict, the estate had no grounds to prevent the district court from reducing the verdict as it did. By reducing the loss of consortium claim by the percentage of fault which the jury attributed to the decedent, the district court did exactly what it was required to do under the law. *See* Iowa Code § 668.3(1)(*b*) (any damages for consortium will be reduced by the percentage of fault attributed to the person who provides the basis for the consortium damages); *id.* § 668.3(4) (the court shall determine the amount of damages payable to each party in accordance with the findings of the court or jury). It follows therefore that Farm Bureau is prejudiced by the amended judgment entry, which restored the jury's verdict on the loss of consortium claims. For that reason Farm Bureau is not bound by the amended judgment entry. *Cf. Carroll v. Martir*, 610 N.W.2d 850, 857 (Iowa 2000) (recognizing that district court has the power to correct its own perceived errors); *see also* Iowa Code §§ 668.3(1)(*b*), 668.3(4).

## V.  Is Farm Bureau Bound by the Original Judgment Entry in Suit I?

In its resistance to the estate's motion for summary judgment on the contract claim, Farm Bureau did not raise any policy defenses (for example, failure to provide suit papers or violation of the consent-to-be-bound provision) to the original judgment entry in suit I.  Nor does Farm Bureau raise any such defenses here.  That is not surprising for three reasons. First, the estate notified Farm Bureau that it was making a UIM claim under the decedent's policy because in the estate's lawsuit against Carter, the estate learned that Carter had liability coverage of only $100,000, a sum the estate believed was insufficient to cover its damages.  Second, the lawsuit against Carter was being defended.  Last, the district court reduced the verdict by reducing the consortium award by the percentage of fault attributed to the decedent.

Moreover, the estate proved Carter's negligence and its damages. And, as mentioned, Carter was defended up to and including the entry of the original judgment.  Therefore at this point the estate had a valid judgment, and Farm Bureau had no reasonable basis to withhold or refuse its consent.  The fact that Carter's attorney did not object to the consortium instruction did not render the defense insubstantial.  In our view an insubstantial defense equates with no defense at all or one that is imaginary or illusory.  That was far from true in this case.  Were we to hold otherwise, an insured would rarely be able to obtain a judgment meeting the legally entitled to recover condition of UIM coverage.  This is because, as a practical matter, a lawsuit is hardly ever *perfectly* defended.

For all of these reasons, we conclude the estate satisfied the legally entitled to recover condition of the UIM coverage provision of the decedent's

policy.  Contrary to the district court ruling, Farm Bureau was bound by the original judgment entry in suit I.

### VI.  The Bad Faith Claim.

As mentioned, in suit II, the district court granted Farm Bureau's motion for summary judgment on the estate's bad faith claim.  On appeal, the estate contends the court erred in dismissing the claim.  The claim is twofold.  The estate contends Farm Bureau's conduct in delaying payment of the decedent's medical expenses under the medical pay provision of her policy constituted bad faith.  Additionally, the estate contends Farm Bureau's conduct in denying the estate's demand to pay the amount of the amended judgment entry in excess of Carter's policy limits constituted bad faith.

Farm Bureau correctly points out that the bad faith issue regarding the medical pay expense was not properly preserved for our review.  The estate concedes that the district court's ruling granting Farm Bureau's motion for summary judgment on the bad faith claim was silent on this issue.  Because the estate failed to file a motion requesting a ruling on this unresolved issue, the issue was not preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537-39 (Iowa 2002).

That leaves for our review that portion of the district court summary judgment ruling regarding Farm Bureau's conduct in denying the estate's demand to pay the amount of the amended judgment entry in excess of Carter's policy limits.  To establish Farm Bureau's bad faith claim, the estate was required to prove (1) Farm Bureau had no reasonable basis for denying the estate's demand to pay the amount of the amended judgment entry in excess of Carter's policy limits and (2) Farm Bureau knew or had reason to know that its denial lacked a reasonable basis.  *See Bellville*, 702 N.W.2d at 473.

In *Bellville,* we summarized the principles we apply in determining whether there is a lack of a reasonable basis necessary for the first element of a bad faith claim:

> A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. A claim is "fairly debatable" when it is open to dispute on any logical basis. Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.
>
> The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim. The focus is on the existence of a debatable issue, not on which party was correct.
>
> Whether a claim is fairly debatable can generally be decided as a matter of law by the court. That is because " '[w]here an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law.' "

*Id.* at 473-74 (alteration in original) (citations omitted).

There are several reasons why Farm Bureau had a reasonable basis to assert it had no duty to pay the estate's demand. Whether Farm Bureau had a good faith duty to consent to be bound by the amended judgment entry had not been decided by an Iowa appellate court. We agree with Farm Bureau that with no Iowa law on the issue, its duty to consent to be bound by the amended judgment entry was fairly debatable. *Cf. id.* at 484-85 (holding similarly regarding consent-to-settlement clause). Moreover, as we already concluded, Farm Bureau was not bound by the amended judgment entry, a fact the estate concedes was necessary to establish the estate's bad faith claim. We therefore conclude as a matter of law that Farm Bureau was not in bad faith for denying the estate's demand to pay the amount of the amended judgment entry in excess of Carter's policy limits.

### VII. Disposition.

In sum, we reach the following conclusions. Farm Bureau is not bound by the amended judgment entry in suit I. We therefore affirm the

district court ruling denying the estate's motion for summary judgment on this issue but for reasons other than those cited by the district court.  As a matter of law, Farm Bureau had a reasonable basis to deny the estate's demand to pay the amended judgment entry in suit I in excess of Carter's policy limits.  We therefore affirm the district court ruling granting Farm Bureau's motion for summary judgment on the estate's bad faith claim.

Contrary to the district court ruling, the consent-to-be-bound provision is valid and enforceable.  We therefore reverse the district court's grant of the estate's motion for summary judgment on this issue.  However, Farm Bureau is bound by the original judgment entry in suit I.  We therefore reverse that part of the district court ruling which allowed Farm Bureau to relitigate damages in the underlying tort suit.

We remand for further proceedings consistent with this opinion.  We have carefully considered all of the issues raised by the parties.  Those we have not addressed we find lack merit or were not properly preserved.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Wiggins, J., who concurs in result only.